**Herbie WAY, and Sandy Way, Plaintiffs–Appellees,**

v.

**RELIANCE INSURANCE COMPANY, Defendant–Appellant.**

No. 88–4895.

United States Court of Appeals, Fifth Circuit.

Oct. 5, 1989.

Murphy J. Foster, III, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant-appellant.

David A. Hughes, Gist, Methvin, Hughes & Munsterman, Alexandria, La., for Way.

Before POLITZ, DAVIS and DUHE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this diversity case governed by Louisiana law, Reliance Insurance Company (Reliance) appeals a judgment the district court entered against it on a performance bond. We conclude that Reliance's offer to issue a bond guaranteeing a contractor's performance was never accepted and Reliance was never bound on the bond. We therefore reverse.

### I.

Herbie and Sandy Way hired a contractor, Craftbilt, Inc., to build their home. The construction contract obligated Craftbilt to obtain a performance bond and consequently, Craftbilt contacted Reliance Insurance Company about bonding the job. Reliance prepared the bond it proposed to issue together with other necessary doc-uments, executed them, and sent them to Craftbilt. Craftbilt then forwarded the documents—executed only by Reliance—to the Ways' architect.

No one from Craftbilt ever executed the bond documents. To the contrary, a representative from Craftbilt informed a Reliance representative that Craftbilt had decided not to bond the Way construction project.

Craftbilt failed to complete the Ways' home and the Ways demanded that Reliance respond as required by the bond. Reliance declined on grounds that Craftbilt never accepted Reliance's offer to issue the bond so that no agreement ever came into existence.

The Ways sued Reliance on the bond in district court. The trial judge concluded that Craftbilt had impliedly accepted Reliance's offer when it sent the bond documents to the Ways' architect. The district court reasoned that because the Ways were willing third-party beneficiaries, the contract, once formed, could not be rescinded without their consent. See La.Civ.Code arts. 1978, 1979. According to the district court, Craftbilt's rejection of Reliance's offer had no bearing on Reliance's obligation because Craftbilt had already impliedly accepted the offer and the Ways had not consented to dissolution of the contract. Based on this determination, the district court held that a contract had been formed and entered judgment on that contract against Reliance.

### II.

The trial judge found that Craftbilt impliedly accepted Reliance's offer by sending the partially executed bond to the Ways.[1] But the record reveals that Reliance had no knowledge of Craftbilt's action. This appeal therefore poses the question whether, under Louisiana law, actions of the offeree that are unknown to the offeror may operate as an effective implied acceptance.

The articles of the Civil Code support the view that implied acceptance which effec-

---

1. The Ways have not argued to this court that Reliance impliedly waived the necessity of com-munication of the acceptance. See *Travelers Indem. Co. v. Ducote,* 380 So.2d 10, 12 (La.1979).

tively creates a binding contract results only from circumstances known to the offeror.[2] The general article on consent, article 1797 of the Louisiana Civil Code of 1870, provides that consent is ineffective "unless ... evinced in some manner that shall cause it to be understood by the other parties to the contract." The more specific articles on acceptance are consistent with this general article. Article 1819 provides that express consent must be "mutually communicated." See also *Rainey v. Riley*, 388 So.2d 110, 111 (La.App. 1st Cir.1980) (acceptance ineffective until delivered to offeror); *Horace Mann Ins. Co. v. Casualty Reciprocal*, 383 So.2d 1040, 1043 (La. App. 1st Cir.1980). Likewise, article 1809 states that acceptance implied by the law is not effective "until the circumstances, which raise such implication, are known to the party proposing...." The Code does not address the knowledge requirement when acceptance, rather than being express or implied by law, is implied only by the circumstances. But because the general consent article requires that manifestations of consent be "understood," and the more specific articles require communication or actual knowledge, we conclude that implied acceptance does not result from circumstances unknown to the offeror.

Such a rule is consistent with the observations of commentators on civilian doctrine and Louisiana law. One of these commentators, Planiol, states:

> It is necessary for the formation of a contract that the acceptance made, outside the presence of the offeror, be communicated to him. Of what value is it if the acceptance is made and the offeror knows nothing about it? The offer is a question which requires a response; and the response does not exist until it is known to him who asked for it.

Planiol, Traite Elementaire de Droit Civil N. 984 at 568 (La. State L. Inst. trans.

1965). Other commentators, by emphasizing the importance of the union or concurrence of the parties wills, also support this rule; the parties' will could not unite on a point until each party is aware of the other parties intentions. See Aubry & Rau, Cours de Droit Civil Francais, Obligations section 343, in 1 Civil Law Translations 304 (La. Law Inst.1965); 1 S. Litvinoff section 129 at 210–11.

A contrary rule makes little practical sense in our highly commercial society. If conduct by the offeree that is unknown to the offeror constitutes an effective acceptance, the offeror will be bound without his knowledge. This prospect would require the offeror to continuously monitor the offeree simply to know whether it is bound. Application of such a rule is particularly harsh in this case where Reliance's offer contained a third party benefit: Reliance would be required to ignore Craftbilt's *express* rejection of its offer and instead investigate Craftbilt's secret communication with third parties to determine whether it is bound on the contract.

In sum, because implied acceptance cannot result from facts unknown to the offeror, Reliance's offer to issue a bond was not accepted and no contract resulted. The Ways' cannot be the third-party beneficiaries of a non-existent contract, and hence, they have no contractual claim against Reliance.[3]

REVERSED.

---

**2.** The events in question occurred before the 1984 revision of the obligations articles so that the law governing this case is unaffected by those revisions.

**3.** On appeal, the Ways argue for the first time that Reliance is bound because of "equitable

estoppel" and "detrimental reliance." We do not consider arguments presented for the first time on appeal, particularly arguments such as these that require factual findings. *Callejo v. Bancomer S.A.*, 764 F.2d 1101, 1117 n. 20 (5th Cir.1985).