**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 90-2722
_____


C.G. DILLARD,

Plaintiff-Appellant,

VERSUS

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.,

Defendants-Appellees.

_____

No. 90-2761
_____


CARVEL G. DILLARD,

Plaintiff-Appellant,

VERSUS

SECURITY PACIFIC CORP., et al.,

Defendants-Appellees.

_____

No. 91-2135
_____


CARVEL DILLARD,

Plaintiff-Appellant,

VERSUS

SECURITY PACIFIC BROKERS, INC., et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Texas

_____

(May 15, 1992)

Before POLITZ, Chief Judge, BROWN and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this consolidated appeal, Carvel Dillard challenges an order compelling arbitration of his 1985 case and orders dismissing his 1986 and 1988 cases. We affirm the order compelling arbitration, affirm in part the dismissals, and remand the 1986 and 1988 cases to the respective district courts.


I.

Carvel Dillard maintained an account with Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") for the purpose of trading securities. The brokerage agreement contained a provision by which the parties agreed to settle any disputes through arbitration.[1] In December 1983, Merrill Lynch partially liquidated some stock held in Dillard's account S)Q an action Dillard claims it took over his objection.

Dissatisfied with Merrill Lynch, Dillard entered into an agreement with the Financial Clearing Services Corporation (FCSC), Security Pacific Brokers, Inc., and Security Pacific Corporation

_____

[1] Although there appear to be several brokerage agreements between Merrill Lynch and Dillard, we refer to these as "the agreement" or "the contract."

2

(collectively "Security Pacific")[2] on February 14, 1984, whereby Security Pacific agreed to purchase put and call options for Dillard upon request and Dillard agreed to open an account with Security Pacific and keep it fully margined. On February 16, 21, and 23, Dillard delivered to Security Pacific three drafts on his Merrill Lynch account totaling $56,256 to finance Security Pacific's trading on his behalf. Merrill Lynch failed to honor the drafts, however, as Dillard's account then had a deficit in excess of $5,000. On February 27, Dillard directed Security Pacific to purchase certain options. Security Pacific did not carry out this order; nor did it carry out a subsequent order for the same options at a different price.

Security Pacific sued Dillard to recover on the bad Merrill Lynch drafts. Although Dillard answered Security Pacific's complaint, he failed to comply with the court's discovery orders, and a default judgment was entered against him. After he filed his answer, Security Pacific (along with Merrill Lynch) instigated a criminal prosecution against him with regard to the bad drafts.

Dillard then filed three pro se federal lawsuits S)Q respectively, in 1985, 1986, and 1988 S)Q against Merrill Lynch, Security Pacific, and other parties involved in the securities transactions and the criminal prosecution. All three of Dillard's lawsuits are at issue in this consolidated appeal.

---

[2] Security Pacific Brokers, Inc., and FCSC are subsidiaries of Security Pacific Corporation. Dillard dealt directly with Security Pacific Brokers, Inc., and FCSC.

3

A.

On July 16, 1985, Dillard filed suit ("the 1985 case") against Merrill Lynch, alleging that it had committed certain fraudulent acts in handling securities transactions on his behalf. His complaint alleged that Merrill Lynch violated section 17(a) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77q(a); section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b), and rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.41 et seq.

Merrill Lynch moved to dismiss the complaint for failure to state a claim as required by Fed. R. Civ. P. 12(b)(6); in the alternative, it moved for a more definite statement on the ground that Dillard had failed to plead fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). In addition, Merrill Lynch moved to compel arbitration pursuant to the arbitration provisions of his trading agreement with Merrill Lynch and requested a stay pending arbitration.

Dillard then filed a "Motion To Declare Compulsory Arbitration Provisions of Defendant's Adhesion Contracts To Be Invalid, and Unenforceable and To Enjoin Enforcement of Same." In the motion, Dillard for the first time raised allegations of an antitrust conspiracy among brokerage firms to include arbitration clauses in all brokerage contracts.

On March 23, 1987, Judge Ross Sterling held a motions hearing. From the bench he ruled that Dillard had no private right of action

4

under section 17(a) of the 1933 Act; that he had not properly pleaded a cause of action under rule 10b-5; and that the claims he had properly pleaded were subject to arbitration and should be stayed pending arbitration. He also ruled that Dillard had not properly raised the requests for declaratory and injunctive relief in his pleadings. Judge Sterling died before entering the order, and the case was assigned to Judge Sim Lake.

On February 1, 1990, Judge Lake "concur[red] with Judge Sterling's finding of a contract requiring arbitration" and ordered the parties to begin arbitration within thirty days. He went on to state that Dillard had made no claim "that creates any question of law, equity or fact that cannot be arbitrated."[3] He also noted that Dillard's request for declaratory and injunctive relief was not properly raised in his pleadings, stating that "[p]laintiff's motions objecting to arbitration on the grounds of federal anti-trust law or adhesion contracts are irrelevant because they are beyond the scope of his pleadings." In addition, he denied Dillard's "Motion for Findings of Fact and Conclusions of Law Concerning Injunctive Relief and Other Previously Filed Motions" that had been filed on October 11, 1989. Finally, he dismissed the entire action without prejudice.

---

[3] At the time of Judge Sterling's bench rulings, it was the law of this circuit that claims under the 1933 Act and the 1934 Act could not be arbitrated. Thus, Judge Sterling's dismissal of Dillard's § 17(a) and rule 10b-5 claims was a necessary prerequisite to the arbitration order. Soon thereafter, the Supreme Court held that claims under both federal acts are subject to arbitration. See Rodriguez de Quijas v. Shearson/Am. Express, 490 U.S. 477, 482-84 (1989) (1933 Act); Shearson/Am. Express v. McMahon, 482 U.S. 220, 238 (1987) (1934 Act). Judge Lake accordingly entered an order compelling arbitration of all claims related to the trading transactions.

On February 14, 1990, Dillard filed a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment. Although he took issue with the court's refusal to consider his antitrust allegations as a separate cause of action, he did not amend his complaint to add these allegations. He also filed a motion for trial by jury. These motions were denied.

On March 3, 1990, Dillard initiated arbitration proceedings before the Chicago Board Options Exchange by filing a Statement of Claim, which was a copy of his first amended complaint in the 1985 case. The matter was referred to the National Association of Securities Dealers, which dismissed all of Dillard's claims after an arbitration hearing on January 4, 1991. Dillard now appeals, challenging the district court's arbitration order and dismissal of the case as well as its refusal to enter findings of fact and to enjoin the enforcement of the arbitration provisions.

B.

On August 20, 1986, Dillard filed his second federal lawsuit ("the 1986 case") S)Q  this time against Security Pacific.[4] In his original complaint, Dillard brought claims relating to (1) the securities transactions (under federal securities law) and (2) the criminal prosecution (under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and the Hobbs

---

[4]   Dillard initially brought this case against Security Pacific Brokers, Inc., and FCSC.  Later, as noted infra, he unsuccessfully attempted to add Security Pacific Corporation as a defendant.

Act, 18 U.S.C. § 1951; he also accused Security Pacific of "false swearing" and "bribery").[5]

On May 20, 1987, the court dismissed the suit on res judicata grounds. Judge Sterling reasoned that all of the claims asserted in Dillard's complaint should have been raised as compulsory counterclaims to Security Pacific's suit to recover on the bad Merrill Lynch drafts.

Dillard appealed, and on January 15, 1988, we affirmed the dismissal as to all claims arising prior to Dillard's answer to Security Pacific's complaint but reversed as to all claims arising after the answer was filed. Specifically, we concluded that the res judicata bar of the default judgment (entered after Dillard had failed to comply with discovery orders) did not encompass Dillard's claims arising out of the criminal prosecution, as the prosecution was instituted after Dillard filed his answer. Dillard v. Security Pacific Brokers, 835 F.2d 607, 609 (5th Cir. 1988) ("Dillard I"). We therefore vacated the dismissal as to Dillard's claims arising from the criminal prosecution and remanded for further proceedings.

Dillard filed a supplemental complaint on July 18, 1988. Judge James DeAnda, to whom the suit had been transferred, struck the supplemental complaint on August 2, 1988, reasoning that Dillard had failed to request leave to file. In his attempted supplemental complaint, Dillard added claims under the federal antitrust laws; he also accused Security Pacific of "malicious

---

[5] The false swearing, bribery, and Hobbs Act claims were brought as part of the RICO claim.

prosecution" and of "undertak[ing] an illegal, improper and perverted use of criminal process." Finally, he made accusations against Security Pacific Corporation (the parent company of Security Pacific Brokers, Inc., and the FCSC), Jenkens & Gilchrist (counsel for Security Pacific), Merrill Lynch, and the Securities Industry Association (SIA). The suit subsequently was transferred back to Judge Lake.

After a status conference on September 15, 1989, Judge Lake ordered Dillard to file an amended complaint by October 15, 1989. Dillard did not file an amended complaint; instead, he filed a motion for a stay pending our decision in the 1988 case discussed infra. Judge Lake granted the stay on October 27, 1989. We then disposed of the first appeal of the 1988 case on May 22, 1988, and Judge Lake ordered Dillard to file an amended complaint by October 5, 1990, or face dismissal.

Dillard complied with Judge Lake's order. His amended complaint added Merrill Lynch, Jenkens & Gilchrist, and the Securities Pacific Corporation as defendants. He also brought claims for defamation, abuse of process, and malicious prosecution, as well as under "Title 42 . . . of civil rights." He did not bring a claim under the federal antitrust laws, nor did he name SIA as a defendant.

In response, the defendants moved to dismiss the complaint under rule 12(b)(6). Judge Lake refused to allow Dillard to add Merrill Lynch, Jenkens & Gilchrist, and Security Pacific Corporation as defendants because "no leave was granted to add new

8

parties." He specifically noted that the "newly added defendants" were dismissed without prejudice. He then dismissed (1) the federal securities claims stemming from the trading transactions as res judicata on the grounds cited in our Dillard I opinion; (2) the defamation, malicious prosecution, and abuse of process claims as time-barred; (3) the Hobbs Act claim on the ground that the statute cited did not provide a private cause of action; and (4) the RICO and civil rights claims without prejudice for failure to state a claim. Dillard now appeals the district court's disposition of the case.

C.

Dillard filed a third federal lawsuit in 1988 ("the 1988 case") S)Q this time against Security Pacific Corporation, Security Pacific Brokers, Inc., FCSC, Merrill Lynch, SIA, and Jenkens & Gilchrist. He asserted antitrust claims against Merrill Lynch, Security Pacific, and SIA; and claims related to the criminal prosecution (i.e., defamation, abuse of process, malicious prosecution, RICO, and Hobbs Act claims) against Merrill Lynch, Security Pacific, and Jenkens & Gilchrist. He also accused Merrill Lynch and the Security Pacific entities of wrongdoing with regard to the trading transactions.

All the defendants moved for dismissal under rule 12(b)(6). Merrill Lynch also moved to compel arbitration. Judge Hughes dismissed the case in three separate orders. Dillard appealed, and

9

we remanded for the limited purpose of requiring the court to state its reasons for the dismissals.

On July 6, 1990, Judge Hughes issued his opinion explaining his earlier orders. First, he stated that the Security Pacific entities were dismissed because all the claims against them were pending in the 1986 case in Judge Lake's court. He then noted that SIA was dismissed for failure to state a claim against it. With regard to Jenkens & Gilchrist, he stated that the case would be abated until Judge Lake ruled on Dillard's motion to amend his complaint to add Jenkens & Gilchrist as a defendant in the 1986 case. Finally, Judge Hughes noted that the case against Merrill Lynch was abated until Dillard received a negative ruling on a motion to amend his complaint in the 1985 case to include additional claims against Merrill Lynch. Dillard now challenges Judge Hughes's disposition of the case.

I.

We first consider Dillard's complaints with regard to the 1985 case. He claims that the district court erred in compelling arbitration of his claims, in denying his request for a jury trial, in denying his request for declaratory and injunctive relief, and in failing to enter findings of fact and conclusions of law in connection with the denial of declaratory and injunctive relief.

A.

Judge Lake found that the Dillard-Merrill Lynch contract required arbitration[6] and that Dillard raised no claim "creat[ing] any question of law, equity or fact that cannot be arbitrated." He therefore ordered the parties to begin arbitration within thirty days and dismissed Dillard's claims without prejudice.[7] Dillard contends that the order compelling arbitration was improper. We disagree.

Section 2 of the Federal Arbitration Act ("the Act"), 9 U.S.C. § 1 et seq., declares that an arbitration clause involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Act also provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." Id. § 4. In a case in which such a trial is required, the Act allows the party resisting arbitration to demand a jury trial. Id.

_____

[6] The contract states the following:

It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect.

[7] Dillard argues at length that the district court improperly dismissed his complaint for failure to state a claim. Although Judge Sterling noted from the bench that Dillard had failed to state a claim under the federal securities laws, Judge Lake explicitly dismissed the complaint without prejudice pursuant to the arbitration clause.

11

Dillard contends that he deserves a jury trial on the question of the validity of the arbitration clause.[8] He argues essentially that he has put the "making of the arbitration" clause "in issue" by alleging that the clause is an unconscionable "adhesion contract." He contends that he had no choice but to accept the arbitration clause in the Merrill Lynch contract because the inclusion of the clause was nonnegotiable. He further alleges that he could not go elsewhere because the majority of brokerage firms use such terms in their contracts; he adds that such uniform use is the result of an antitrust conspiracy among brokerage firms.

A party to an arbitration agreement cannot obtain a jury trial merely by demanding one. Saturday Evening Post Co. v. Rumbleseat Press, 816 F.2d 1191, 1196 (7th Cir. 1987). The party resisting arbitration bears "the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Bhatia v. Johnston, 818 F.2d 418, 422 (5th Cir. 1987).[9] Our caselaw has not established the precise showing a party must make. We have, however, suggested that the party must make at least some showing that under

---

[8] There is no question that Dillard's substantive claims are arbitrable. See Rodriguez de Quijas, 490 U.S. at 482-84 (1933 Act claims subject to arbitration); McMahon, 482 U.S. at 238 (1934 Act claims subject to arbitration); Commerce Park at DFW Freeport v. Mardian Constr. Co., 729 F.2d 334, 340 (5th Cir. 1984) (DTPA claims subject to arbitration). The only issue, then, is whether the arbitration clauses at issue in this case are enforceable.

[9] Under Supreme Court precedent, a party must challenge the "'making' of the agreement to arbitrate" itself in order to create a jury-triable issue. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). If the party makes allegations regarding the contract as a whole S)Q e.g., that the brokerage contract is a contract of adhesion S)Q that issue must go to arbitration. Id. In most cases in which a customer seeks to avoid arbitration by alleging that the contract is one of adhesion, he fails to allege specifically that the arbitration clause is adhesive. See, e.g., Bhatia, 818 F.2d at 422. Dillard has met this threshold requirement, for he focuses specifically on the arbitration provision as an adhesive term.

12

prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true. In addition, he must produce at least some evidence to substantiate his factual allegations. T & R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980).[10]

We affirm the district court's order to arbitrate on the ground that Dillard failed to make a sufficient showing that the arbitration provision at issue should not be enforced. Adhesion contracts are not automatically void. Instead, the party seeking to avoid the contract generally must show that it is unconscionable. See 6A Arthur L. Corbin, Contracts § 1376 at 20-21 (1962) and 7-9 (1991 Supp.). Several federal courts have considered and rejected the argument that agreements to arbitrate disputes in the securities context are unconscionable as a matter of law. As explained by the Ninth Circuit,

> The strong federal policy favoring arbitration, coupled with the extensive regulatory oversight performed by the SEC in this area, compel the conclusion that agreements to arbitrate disputes in accordance with SEC-approved procedures are not unconscionable as a matter of law.

Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 286 (9th Cir. 1988). See also Adams v. Merrill Lynch, Pierce, Fenner & Smith,

---

[10]  In T & R Enters., the party seeking to avoid arbitration put the existence of the arbitration agreement "in issue" by alleging that although he had signed the agreement, the true agreement between the parties was reached during a telephone conversation in which arbitration was not discussed. First, we rejected this argument as "contrary to the universally prevailing rule that . . . one who executes a written contract is bound by its terms." Id.  We also noted that we were "rather persuaded" by Almecenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945), which held that not only must a party deny that he made an agreement to arbitrate, but evidence must be produced to substantiate the denial.  Id.  See also Interbras Cayman Co. v. Orient Victory Shipping Co., S.A., 663 F.2d 4, 7 (2d Cir. 1981) (reaffirming Almecenes Fernandez).

13

888 F.2d 696, 700 (10th Cir. 1989); <u>Surman v. Merrill Lynch, Pierce, Fenner & Smith</u>, 733 F.2d 59, 61 n.2 (8th Cir. 1984).  In addition, Dillard failed to produce any evidence that the agreement to arbitrate was somehow unfair or oppressive in this case.

Moreover, the allegations of antitrust conspiracy do not lead to the conclusion that the Merrill Lynch contract was an unconscionable contract of adhesion.  Even if the district court were to find that such an antitrust conspiracy existed, this finding would not compel the invalidation of the agreement to arbitrate; instead, it would lead to an award of damages for any injury stemming from the anticompetitive behavior.[11]  Thus, because Dillard failed to show the existence of a genuine issue of fact to be tried before a jury, we affirm the district court's arbitration order and dismissal without prejudice.[12]

B.

In his "Motion To Declare Compulsory Arbitration Provisions of Defendant's Adhesion Contracts To Be Invalid, and Unenforceable and To Enjoin Enforcement of Same," Dillard attempted to set forth his antitrust conspiracy allegations as separate causes of action.

---

[11]  Section 4 of the Clayton Act, 38 Stat. 731, as amended, 15 U.S.C. § 15(a), provides that any person "injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained . . . ."

[12]  In addition to alleging that he was denied his statutory right to a jury trial, Dillard claims he was deprived of his right to a jury trial under the Seventh Amendment.  This argument is without merit.  In <u>McMahon</u>, the Court endorsed enforcing agreements to arbitrate statutory claims unless Congress has prohibited waiver of a judicial forum for the particular claim at issue. 482 U.S. at 226-27.  We conclude from this that the Seventh Amendment does not preclude "waiver" of the right to jury trial through the signing of a valid arbitration agreement.

Judge Lake did not deny this "motion" as Dillard contends; instead, he refused to consider Dillard's request for declaratory and injunctive relief because Dillard did not properly request such relief in his pleadings.

In order to obtain a permanent injunction or a declaratory judgment, a party must make his request for such relief in his pleadings. Fed. R. Civ. P. 8(a). Dillard's complaint failed to make such a request. Moreover, there was no indication that Dillard was requesting temporary or preliminary relief S)Q a request that can be made in a motion. 11 Charles A. Wright, et al., Federal Practice and Procedure § 2949 at 467 (1973). Therefore, Judge Lake properly refused to consider Dillard's allegations apart from Dillard's attack on the validity of the arbitration clauses per se.[13]

III.

With regard to the 1986 case, Dillard contends that the district court erred in dismissing his defamation, malicious prosecution, and abuse of process claims as time-barred and in

_____

[13] Dillard claims that he was entitled to findings of fact with regard to the denial of injunctive and declaratory relief. Fed. R. Civ. P. 52(a) requires such findings in "actions tried upon the facts without a jury" and with regard to "granting or refusing interlocutory injunctions." Neither situation was present in this case. First, no action was tried to the court without a jury. Judge Lake ordered the parties to commence arbitration; he settled no substantive claims. Second, Dillard did not make a request for an "interlocutory injunction." Rather, he requested a declaratory judgment and permanent relief from his obligations under the arbitration clause.

15

dismissing his civil rights and RICO claims for failure to state a claim.[14]  These grounds of error are addressed below.

A.

Dillard filed his original complaint in this suit on August 20, 1986, accusing Security Pacific[15] of "[f]alse [s]wearing" and "brib[ing] a law enforcement officer" in connection with the filing of criminal charges against him.  He also alleged that "[t]he false criminal charge was one of a number of outrageous actions done by defendant[] to harass and oppress" him.  These charges were based upon the fact that "[i]n August 1984 defendant[] made a knowingly false affidavit charging theft by plaintiff . . . ."  At the time of the filing of his 1986 complaint, Security Pacific had complained to the authorities, and an indictment had been issued on August 19, 1985.

Several events occurred after the filing of this original complaint.  The indictment was quashed on September 16, 1987.  On that same day, a second indictment was issued but was dismissed on June 21, 1988.  On July 18, 1988, Dillard filed his supplemental complaint (which was stricken for failure to ask leave of court to

---

[14]  Dillard also challenges the district court's refusal to allow him to add Merrill Lynch, Jenkens & Gilchrist, and Security Pacific Corporation as new party defendants.  This refusal was proper, as he failed to request leave of court.

In addition, Dillard attacks the district court's dismissal of his allegations and claims related to the trading transactions.  Those claims are barred by Dillard I, however, and were properly dismissed.  Finally, we do not consider the court's dismissal of Dillard's Hobbs Act claim, as he does not raise it as a ground for error.

[15]  As noted supra, the 1986 case started and ended as a case against FCSC and Security Pacific Brokers, Inc.

16

file it) alleging a "pattern of baseless repetitive claims" constituting "a badge of malicious prosecution." He also alleged "an illegal, improper and perverted use of criminal process."

Dillard specifically raised abuse of process, malicious prosecution, and defamation causes of action on October 5, 1990, in his first amended complaint, which he filed after we remanded to the district court to consider Dillard's claims arising from the criminal prosecution in Dillard I. The district court used the date of the first amended complaint S)Q October 5, 1990 S)Q for purposes of calculating the timeliness of Dillard's malicious prosecution, abuse of process, and defamation causes of action and found that all three were time-barred. Use of this tolling date would be erroneous, however, if the claims in the amended complaint stemmed from the same "transaction or occurrence" addressed by the original complaint. In such a case, the amended complaint would "relate back" to the filing of the original complaint.

Under Tex. Civ. Prac. & Rem. Code § 16.068,[16] which is similar to Fed. R. Civ. P. 15, the limitations period is tolled by the first pleading related to the transaction or occurrence:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

---

[16] Under Erie R.R. v. Tompkins, 304 U.S. 64 (1938), we must evaluate the state of limitations issues in accordance with Texas law.

17

Texas courts have employed section 16.068 both to save defective pleadings and to allow amendments alleging separate but related bases of recovery.[17]  Thus, the inquiry is not whether an amended complaint adds a new or different cause of action; rather, it is whether that new or different cause of action is wholly based upon, and grows out of, a new, distinct, or different transaction or occurrence.  Meisler v. Republic of Tex. Sav. Ass'n, 758 S.W.2d 878, 882 (Tex. App. S)Q Houston [14th Dist.] 1988, no writ).

As the record now stands, we cannot discern whether the defamation, abuse of process, and malicious prosecution claims grew out of a "wholly . . . new, distinct, or different transaction or occurrence."  We thus remand the timeliness issue to the district court for consideration of the relation-back issue.  We also cannot discern from the district court's opinion whether Dillard properly raised the relation-back issue.[18]  If he did not, we cannot consider the issue on appeal, see Way v. Reliance Ins. Co., 884 F.2d 866, 868 n.3 (5th Cir. 1989); thus, there would be no need for the

---

[17]  See, e.g., Abbott v. Foy, 662 S.W.2d 629, 631 (Tex. App. S)Q Houston [14th Dist.] 1983, writ ref'd n.r.e.) (amendment cured defective complaint); Bradley v. Etessam, 703 S.W.2d 237 (Tex. App. S)Q Dallas 1985, writ ref'd n.r.e.) (amendment adding wrongful death cause of action related back to original complaint alleging medical malpractice).

[18]  There is only one sentence in the district court's opinion that touches on the issue, where the court states that "Dillard asserts that because the [defamation] cause of action based upon the second indictment was timely raised in [the 1988 case], it is not time-barred in this action."  This is similar to Dillard's ground for error before this court.  Although he does not specifically raise the Texas "relation back" statute, he does ask us to consider the "earliest pleading in any action [as] tolling the statute" of limitations.  We believe this is sufficient (but just barely) to raise the "relation back" issue for appellate review, as Dillard asks us to consider "any" pleading S)Q which could include earlier pleadings in the 1986 case S)Q in addressing the statute of limitations question.  It appears from the district court's recitation of Dillard's argument that he did not make a similar request to the district court.  We leave it to the district court, however, to answer this question.

district court to address the issue on remand, for its opinion on the timeliness issue would have become final.

## B.

We agree with the district court that Dillard failed to state a claim under either RICO or federal civil rights law.[19] Dillard argues, however, that when read in conjunction, his 1985, 1986 and 1988 complaints (and amendments thereof) do state a claim.

We decline Dillard's invitation to read all of his complaints together. This tangled web of litigation is of his own making. Thus, we do not agree that "substantial justice" requires us to hold, as he suggests, that "if a cause of action is properly plead[ed] in any action or in any combination of actions it is properly plead[ed]."

## IV.

Finally, with regard to the 1988 case, Dillard argues that the district court erred in dismissing SIA from the suit for failure to state a claim against it, in abating the suit against Merrill Lynch and Jenkens & Gilchrist, and in dismissing the Security Pacific

---

[19] The district court held that although "[i]t is perhaps possible that a RICO claim may lie buried somewhere" in Dillard's complaint, it could not find it. After examining Dillard's complaint, we agree and affirm the dismissal.

Similarly, we affirm the dismissal of Dillard's civil rights claim, which consists of the following: "Plaintiff additionally makes claim against defendants for damages to plaintiff due to . . . Title 42 violation of civil rights." Mere conclusory allegations of a deprivation of civil rights are insufficient to withstand a motion to dismiss. Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).

entities on the ground that similar claims were pending against them in Dillard's 1986 case.

## A.

Dillard's sole complaint against SIA is its involvement in the alleged antitrust conspiracy.[20]  In his 1988 suit, Dillard repeats the allegations he raised in his injunction motion in the 1985 suit.  Essentially, he points to the fact that the vast majority of brokerage agreements contain arbitration clauses and alleges that those clauses are the result of an antitrust conspiracy in the brokerage industry.

Judge Hughes dismissed SIA because Dillard failed to state an antitrust claim against it.  As Judge Hughes noted,

> The Association could have been a clearinghouse for price fixing information, but Dillard did not make that allegation.  The Association is not a market participant, and Dillard failed to allege facts that it was a conduit for conspiratorial anti-competitive pricing or monopolization.  This lack of sufficient factual allegations constitutes failure to state a claim against the Association for antitrust violations.

In paragraph 22 of his complaint, however, Dillard made the precise allegation Judge Hughes thought was missing.  In that paragraph, Dillard alleged the following:

> Defendants and their co-conspirators, in order to effect monopolization, acted with the intention that services be unavailable except on similar unfair terms[;] and legal seminars, and <u>legal bulletins of the conspirators' trade association, S.I.A., and other exchanges of information on model arbitration clauses</u> and

---

[20]  In his complaint, Dillard states in his prayer for relief "[t]hat S.I.A. would be found guilty only of anti-trust law violations."

> their intent to use them caused each individual company to know that others would act in conjunction with it to restrain the trade of those who refused to arbitrate.

Although the allegations connecting SIA to the conspiracy are somewhat inartful, there is no question that Dillard made them.

SIA seems to acknowledge this in its brief, for it restates Dillard's allegations that it acted as a clearinghouse for anti-competitive information.[21] SIA, therefore, argues that there are two additional deficiencies in Dillard's complaint: Dillard (1) failed to allege an agreement or conspiracy among the brokerage firms; and (2) failed to allege facts to show how he has been economically damaged.

1.

Section 1 of the Sherman Act[22] proscribes "[e]very contract, combination . . . or conspiracy [] in restraint of trade or commerce . . . . " 15 U.S.C. § 1. In order to state a claim for a violation of Section 1, a plaintiff must allege (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an "unreasonable" restraint of trade. White & White v. Am. Hosp. Supply Corp., 723 F.2d 495, 504 (6th Cir. 1983). Contrary to SIA's assertions, Dillard alleged "the existence of a conspiracy" in

---

[21] As SIA notes, "Dillard asserts that SIA disseminated information about the use of [model arbitration clauses] to its members, and that each member understood from that information that it could use [the model arbitration clauses] without fear of losing business to other brokers because all brokers would necessarily use [the model clauses] as nonnegotiable contract terms."

[22] Dillard also brings a claim under section 2. His claim, however, is more appropriately considered under section 1.

several places in this complaint.  For example, in paragraph 19, he charges a

> conspiracy by Defendants and their competitors in violation of the Sherman Anti-Trust Act by the Defendants in adopting and agreeing to use, and in using exclusively certain uniform contracts for securities trading containing provisions for the determination by arbitration of all claims and controversies arising under said contracts.

Dillard goes on to allege that the defendants "acted with the intention that services be unavailable except on similar unfair terms."  Essentially, Dillard asserts that SIA disseminated information about the use of arbitration clauses; from that dissemination, he argues, each member of the SIA understood that it could use the arbitration clause in its contracts without fear of losing business.[23]

SIA argues that Dillard alleges nothing more than "conscious parallelism" in the industry, which is not enough to state a claim for conspiracy.  In particular, Dillard states that he "will show the similarity of behavior can, under the facts, only be attributed to an understanding among securities industry competitors to effect the restraint."  SIA is correct when it asserts that proof of parallel business behavior is insufficient to prevail on a Sherman Act claim.  See Theatre Enters. v. Paramount Film Distrib. Corp., 346 U.S. 537, 541 (1954).  But SIA seems to confuse the standard

---

[23]  He models his complaint after Paramount Famous Lasky Corp. v. United States, 282 U.S. 30 (1930), in which competitors in the film industry agreed to use a standard form contract containing an arbitration clause in their dealings with movie theaters.  If a theater owner failed to submit disputes to an industry-controlled arbitration panel, or if he refused to abide by an arbitration award, the industry conspirators would refuse to do business with him again until he put up a security deposit, arbitrated the dispute, or abided by the arbitration award.

22

for withstanding summary judgment with the standard for defeating a rule 12(b)(6) motion.

Dillard does not need to "off[er] any plausible reason for defendants to have conspired," as SIA suggests. He merely needs to allege that they did indeed conspire and give some factual allegations that would support such a claim. See McCleneghan v. Union Stock Yards Co., 298 F.2d 659, 663 (8th Cir. 1962) (plaintiff needs to make more than an allegation of conspiracy; he must make a statement of facts constituting the conspiracy). Dillard does this by alleging that the defendants attended seminars and conferences at which arbitration clauses were discussed and that they adopted such clauses knowing that they could do so without fear of competition.

2.

Section 4 of the Clayton Act, which provides the private right of action to enforce the Sherman Act, requires that the antitrust plaintiff seek recovery for injury "in his business or property." 38 Stat. 731, as amended, 15 U.S.C. § 15(a). Dillard alleges that "[t]here has been injury to MR. DILLARD'S business and to his property because of duress of threat to restrain trade of Plaintiff lest he sacrifice right of recovery by judicial determination . . . ." SIA argues that the dismissal for failure to state a claim was proper because Dillard "alleged no facts to show how he has been economically damaged."

23

Contrary to SIA's suggestion, Dillard need not show how he was damaged at this point, however.  The fact is that he alleged that his business and property were injured.  This is sufficient to satisfy the requirements of notice pleading.[24]  We therefore reverse the district court's dismissal of SIA for failure to state a claim against it.[25]

B.

Judge Hughes abated the claims against Merrill Lynch "until Dillard moves to, and receives a negative ruling on a motion to, amend his complaint" in the 1985 case to add the claims asserted in his 1988 complaint.  In his 1985 complaint, Dillard alleged that Merrill Lynch violated the federal securities laws as well as the DTPA.  In that complaint he did not state claims arising from the criminal prosecution or in connection with the alleged antitrust conspiracy (Judge Lake refused to consider Dillard's antitrust allegations as a separate cause of action because he did not properly raise them in his pleadings.)

It was within Judge Hughes's discretion to abate the claims pending in his court with the hope that Dillard would consolidate all his claims against Merrill Lynch in one forum.  We have

---

[24]  SIA does not contest the sufficiency of Dillard's complaint as to pleading unreasonable restraint or interstate commerce; thus, we do not consider these issues.

[25]  We leave it to Judge Hughes on remand to survey the procedural landscape of this case and to decide whether Dillard's claims against SIA should go forward in his or another court.

expressly noted in the past that a stay[26] "pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." ACF Indus. v. Guinn, 384 F.2d 15, 19 (5th Cir. 1967), cert. denied, 390 U.S. 949 (1968).

At the time of Judge Hughes's order, Dillard had filed a motion to amend the judgment in the 1985 case that raised the antitrust claims but not the claims related to the criminal prosecution; the latter were, however, raised in the first amended complaint in the 1986 case. Since that time, Judge Lake has denied the motion to amend judgment in the 1985 case. He also refused to allow Dillard to add Merrill Lynch to the 1986 case on the ground that Dillard failed to ask leave of court to add new defendants. The question is, then, whether Dillard has complied with Judge Hughes's request.

Merrill Lynch correctly points out that Dillard never attempted to file a motion to amend his 1985 complaint. Dillard's motion to amend judgment in that case (which raised only the antitrust claims) was pending at the time, however. Considering Dillard is pro se, this is enough for substantial compliance with Judge Hughes's request.

Similarly, Dillard attempted to add Merrill Lynch to his 1986 case, in which Dillard's claims stemming from the criminal

---

[26]   An abatement can be either a stay or a dismissal. Baer v. Fahnestock & Co., 565 F.2d 261, 263 (3d Cir. 1977).  In this case, the abatement should be considered a stay, given that Judge Hughes abated the case only until the occurrence of a specific event S)Q Dillard's attempt to add his 1988 claims to the 1985 case.

prosecution were pending. Judge Hughes, however, had asked him to amend his 1985 complaint. Again, especially considering that both the 1985 and the 1986 cases are assigned to Judge Lake, this appears to be substantial compliance. In sum, we affirm Judge Hughes's abatement of the case. Because Dillard substantially complied with Judge Hughes' request, he is free to return to Judge Hughes's court with his claims. At that time, Judge Hughes can survey the procedural landscape and make further orders, if necessary.

## C.

It was within Judge Hughes's discretion to abate the case against Jenkens & Gilchrist pending a decision on Dillard's motion to amend his complaint in the 1986 case to add it as a defendant. Dillard did attempt to add Jenkens & Gilchrist, but his request was denied because he failed to seek leave of court to file a motion to add new party defendants. Again, considering Dillard is pro se, he has substantially complied with Judge Hughes's order. Dillard is now free to return to Judge Hughes's court with his claims against Jenkens & Gilchrist, and Judge Hughes may make further orders as appropriate.

## D.

Judge Hughes dismissed the claims against Security Pacific Corporation, Security Pacific Brokers, Inc., and FCSC, reasoning that all the claims were still pending in the 1986 case. At the

26

time of Judge Hughes's decision, the following had occurred in the 1986 case: We had affirmed the district court's dismissal of Dillard's claims relating to the trading transactions as res judicata; Dillard had filed his supplemental complaint on remand; Judge DeAnda had stricken the supplemental complaint for failure to request leave of court to file it; and Judge Lake had granted a stay pending the first appeal of this (the 1988) case. Dillard had not yet filed his first amended complaint, and when he did so later, he did not raise any antitrust claims against the Security Pacific entities. Thus, Judge Hughes was incorrect in his assumption that all Dillard's claims against Security Pacific were pending in the 1986 case; the antitrust claims were not.

We assume that Judge Hughes's dismissal was with prejudice.[27] The effect of Judge Hughes's dismissal of the Security Pacific entities is to preclude Dillard from adding the antitrust claims to the 1986 case. We therefore reverse the dismissal of the antitrust claims as an abuse of discretion. A more appropriate course of action would have been to abate the antitrust claims against the Security Pacific entities until Dillard sought and obtained a negative ruling on a motion to amend his 1986 complaint.

With regard to Dillard's duplicative claims (i.e., those brought against Security Pacific in both the 1986 and the 1988 cases), it was within Judge Hughes's broad discretion to stay them

---

[27] This is because Judge Hughes did not state otherwise. In addition, Security Pacific assumes that the dismissal was with prejudice, as it argues alternative grounds for affirming the dismissal with prejudice, such as statute of limitations and res judicata.

27

pending the outcome of the 1986 case or to dismiss them without prejudice. See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 729 & n.1 (5th Cir. 1985). See also First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989) (affirming dismissal without prejudice).[28] Dismissal with prejudice, however, would be an abuse of discretion. The 1986 case would have no res judicata or collateral estoppel effect on the 1988 case until it came to final judgment, which it had not at the time of Judge Hughes's order; thus, dismissal with prejudice was improper.

Security Pacific would like us to affirm the dismissal because Dillard could have brought all his claims (including the antitrust claim) in the first amended complaint in the 1986 case. This reasoning does not lead to a dismissal with prejudice, however; instead, it argues for an abatement, stay, or dismissal without prejudice. Again, we leave it to Judge Hughes to evaluate the status of Dillard's litigation and make further orders, if necessary.

---

[28] The West Gulf and First City cases deal with the so-called first-to-file rule, which comes into play when a plaintiff files similar lawsuits in two different federal districts. We have held that to avoid duplicative litigation, "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." West Gulf, 751 F.2d at 729. The first-to-file rule holds that "[i]n the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case." 909 Corp. v. Village of Bolingbrook Police Pension Fund, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) (citation omitted). The same concern with avoiding duplicative litigation is present where similar suits have been filed in two courts within the same district, as is the case here.

V.

Dillard has filed several motions to consolidate his cases S)Q all of which have been denied. Consolidating actions in a district court is proper when the cases involve common questions of law and fact and the district court finds that it would avoid unnecessary costs or delay. St. Bernard Gen. Hosp. v. Hosp. Serv. Ass'n, 712 F.2d 978, 989 (5th Cir. 1983), cert. denied, 466 U.S. 970 (1984); Fed. R. Civ. P. 42. The power of the district court to consolidate is purely discretionary. St. Bernard, 712 F.2d at 989. We therefore affirm the various denials of Dillard's motions to consolidate. Given consolidation of the three cases on appeal, however, we suggest that Dillard renew his request for consolidation with the district courts in the 1986 and 1988 cases. See e.g., St. Bernard, 712 F.2d at 990 (asking the district court to reconsider S)Q although not reversing for abuse of discretion S)Q its denial of motion to consolidate antitrust cases).

## VI.

In summary, in the 1985 case, we AFFIRM the district court in all respects. In the 1986 case, we AFFIRM the district court in all respects except for the dismissal of the defamation, malicious prosecution, and abuse of process claims; with regard to those claims, we REMAND for consideration of the "relation back" issue if that issue was properly raised. In the 1988 case, we REVERSE the district court's dismissal of SIA; REVERSE the dismissal with prejudice of the Security Pacific entities; AFFIRM the abatement of claims against Merrill Lynch and Jenkens & Gilchrist; and REMAND

the case for further consideration. We also DENY Dillard's other requests and motions, including his motion for sanctions. Finally, we emphasize that in remanding we express no view regarding whether `any of Dillard's claims are meritorious.