IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20503
Summary Calendar
_____

CARVEL G. DILLARD,

Plaintiff-Appellant,

versus

SECURITY PACIFIC CORPORATION,
MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., SECURITIES INDUSTRY
ASSOCIATION, INC., SECURITY PACIFIC
BROKERS, INC., FINANCIAL CLEARING
AND SERVICES CORPORATION, JENKENS &
GILCHRIST, A PARTNERSHIP, JENKENS &
GILCHRIST, A PROFESSIONAL CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Southern District of Texas
(CA-H-88-2848)
_____

April 18, 1996
Before REAVLEY, SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Carvel Gordon Dillard challenges orders

compelling arbitration with defendants Merrill Lynch, Pierce,

Fenner & Smith, Inc. (Merrill Lynch), Security Pacific

Corporation, Security Pacific Brokers, Inc., Financial Clearing

_____

    [*] Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

and Services Corporation (FCSC), and Jenkens and Gilchrist (J&G), (collectively, Security Pacific). Dillard also challenges an order granting summary judgment to Security Industry Association, Inc. (SIA), a trade association for the securities industry. Finally, Dillard challenges the denial of his motions for partial summary judgment and for a preliminary injunction. We affirm.

## I.

The lengthy factual and procedural history of Dillard's three federal lawsuits is detailed in <u>Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 961 F.2d 1148 (5th Cir. 1992) (<u>Dillard II</u>), <u>cert. denied</u>, 506 U.S. 1079 (1993), and <u>Dillard v. Security Pacific Brokers, Inc.</u>, 835 F.2d 607 (5th Cir. 1988) (<u>Dillard I</u>). Dillard brought suit against the defendants in 1985, 1986, and 1988. This appeal concerns the 1988 suit. Dillard's causes of action against the various defendants arose from trades in margins and options that Merrill Lynch and Security Pacific made for Dillard in 1983 and 1984. Before Dillard opened margin and option accounts at the two firms he signed agreements requiring disputes to be resolved through

arbitration.[1]  The central issue in the case is whether the arbitration clauses are enforceable.

**A. Merrill Lynch**

In his first amended complaint, Dillard asserted causes of action against Merrill Lynch for malicious prosecution, abuse of process, defamation and violations of RICO, civil rights, and antitrust laws.  Merrill Lynch filed a motion to compel arbitration, and an alternative motion for summary judgment.  The district court granted the motion to compel arbitration, denied as moot the motion for summary judgment, and dismissed the suit against Merrill Lynch.  We affirm these orders of the district court.

---

[1]Paragraph 11 of the Customer Agreement with Merrill Lynch states:

> It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect.

Dillard's customer agreement and margin agreement with Security Pacific Brokers contain the following:

> To the extent permitted by law, any controversy arising out of or relating to any of my account(s) with FiCS or this agreement, shall be submitted to arbitration conducted under the Constitution and Rules of the Board of Governors of the New York Stock Exchange Inc. or the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. or the arbitration panel of any other exchange which has jurisdiction over the transaction in dispute[.]

Merrill Lynch and Dillard signed a contract requiring arbitration of disputes.  Dillard does not deny that the language of the arbitration clause is broad enough to cover the claims he has made against Merrill Lynch.  In order to have his case heard in court, the party resisting arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true."  Dillard II, 961 F.2d at 1154.   Dillard argues that the arbitration provision is unenforceable because it is an unconscionable provision in an adhesion contract, and because it is the product of an antitrust conspiracy.  These arguments failed in Dillard II, and they fail again here.  Id. at 1153-55.

Adhesion contracts are not automatically unenforceable; the party seeking to avoid one must generally show that it is unconscionable.  Id. at 1154.  Dillard II rejected the argument that arbitration clauses in the securities context are unconscionable as a matter of law, 961 F.2d at 1154-55, and Dillard failed to produce evidence that the agreement to arbitrate was unfair, oppressive, or made under duress.  In fact, Dillard admitted that he never even negotiated to have the arbitration clauses removed from either the Merrill Lynch or the Security Pacific contracts.[2]

_____

[2]In a hearing and in his deposition, Dillard stated that at Merrill Lynch he inquired generally about whether the contract could be changed, but admitted that he did not attempt to negotiate for a change in the arbitration clause, by offering, for example, to pay a higher charge for trades.  Dillard also admitted that he made no attempt to change the arbitration clause at Security Pacific.

4

Dillard's argument that an antitrust conspiracy renders the arbitration clause unenforceable is likewise without merit. Even if such an antitrust conspiracy existed, "this finding would not compel the invalidation of the agreement to arbitrate . . . ." Dillard II, 961 F.2d at 1155.

Dillard argues vociferously that the arbitration clause violates his Seventh Amendment right to jury trial. This argument is meritless. Private actors such as Merrill Lynch and Security Pacific cannot violate Dillard's constitutional rights, and in Dillard II this court held that "the Seventh Amendment does not preclude 'waiver' of the right to jury trial through the signing of a valid arbitration agreement." 961 F.2d at 1155 n.12. Dillard argues that enforcement of contractual arbitration clauses violates the Seventh Amendment where the contract is one of adhesion and there is a great disparity of bargaining power. Even if Dillard correctly states the law, his argument fails for the reasons given above: Dillard has produced no evidence that the clause is unconscionable, oppressive, or was made under duress.

Because Dillard failed to show that he would be relieved of his contractual obligation to arbitrate, and because all of his claims are arbitrable, his claims were properly ordered to arbitration.

5

**B. Security Pacific**

Dillard asserted claims for malicious prosecution, abuse of process, defamation, and violations of RICO, Hobbs Act, civil rights laws, and antitrust laws, against Security Pacific, Inc., Security Pacific Brokers, Inc., and Financial Clearing & Services Corp. (FCSC). Dillard has agreed to arbitrate his claims against these entities. Dillard asserted all but the antitrust claims against J&G, with whom he opposes arbitration.

Dillard's claims against J&G are based on acts J&G took as an agent of Security Pacific Brokers in matters related to Dillard's margin and option accounts. Claims against an agent of a signatory to an arbitration agreement are arbitrable if such claims fall within the scope of the arbitration agreement. Taylor v. Investors Assoc., Inc., 29 F.3d 211, 213 (5th Cir. 1994) (defendant's motion to compel arbitration must be granted where the defendant is an agent or third-party beneficiary of an arbitration agreement between the plaintiff and a co-defendant). Because claims against J&G fall within the scope of the arbitration agreement, the district court properly issued orders compelling arbitration of those claims, dismissing the case against the Security Pacific defendants and J&G, and denying these defendants' motion for summary judgment.

## C. Securities Industry Association, Inc. (SIA)

Prior to Dillard II, the district court had dismissed the antitrust claims against SIA for failure to state a claim. In Dillard II, this court reversed after noting that Dillard was not required to produce facts to support his allegations at that stage in the proceedings. Dillard II, 961 F.2d at 1159. Dillard filed an amended complaint in 1993, asserting causes of action for antitrust and RICO violations against SIA. SIA moved for summary judgment on the antitrust and RICO claims on January 20, 1994, and the district court granted the motion on March 27, 1995. Dillard now appeals. We review de novo the district court's order granting summary judgment.

Under Fed. R. Civ. P. 56(c), the moving party bears the initial burden of demonstrating an absence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986). Once the moving party has met its burden, the non-movant must come forward with specific, admissible evidence demonstrating a genuine issue of material fact for trial. Matsushita, 106 S.Ct. at 1356.

In order to prevail on his antitrust claim, Dillard must prove (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an unreasonable restraint of trade. Dillard II, 961 F.2d at 1158. If defendants had no rational economic motive to conspire, and if their conduct is consistent with equally plausible, legal explanations, the conduct does not

7

give rise to an inference of conspiracy. <u>Matsushita</u>, 106 S.Ct. at 1356. To survive a motion for summary judgment, Dillard must present evidence that tends to exclude the possibility that the alleged conspirators acted independently. <u>Id</u>. SIA submitted evidence that brokerage firms use arbitration because it is a quicker and less expensive way to resolve litigation. This meets SIA's burden under Rule 56(c).

Dillard failed to present any evidence of an alleged conspiracy, admitting in his deposition that he lacks specific facts to support his assertion that SIA and its members conspired to establish adhesion arbitration clauses in brokerage contracts. Dillard also admitted that SIA had no control over its members and did not compel members to include arbitration clauses in their contracts governing margin and option accounts.

Dillard argues, however, that sufficient discovery has not been conducted, and that the district court's denial of additional time for discovery was an abuse of discretion. This contention is meritless. The district court points out that this case has been pending for seven years and related litigation for ten years. SIA responded to Dillard's discovery requests and he served no additional requests on SIA for more than a year before the judge ruled on SIA's motion for summary judgment. Dillard filed no Rule 56(f) affidavit, and although his response to SIA's motion for summary judgment detailed discovery that Dillard believed should have been produced by SIA and Merrill Lynch, he never explained why the information was essential to justify his

8

opposition to SIA's motion, as Rule 56(f) requires. See Fed. R. Civ. P. 56(f). Dillard was particularly concerned about copies of newsletters, bulletins, and letters allegedly sent from SIA to the membership "exhorting them to adopt the model [arbitration] clause." Dillard failed to establish, in his motion opposing summary judgment or elsewhere, how an exhortation to adopt an arbitration clause gives rise to an inference of antitrust conspiracy. Simply put, Dillard has failed to present any evidence that tends to exclude the possibility that the alleged conspirators acted independently. See Matsushita, 106 S.Ct. at 1356 (requiring antitrust plaintiffs to come forward with such evidence or lose on summary judgment). For all of these reasons, the district court did not abuse its discretion in ruling on the motion for summary judgment before allowing Dillard additional time for discovery.

Because Dillard did not introduce evidence raising a fact issue about the existence of a conspiracy, the district court properly granted summary judgment on Dillard's antitrust claims. Dillard's RICO claims fail for the same reason. To establish a RICO claim, a plaintiff must allege and prove the commission of at least two predicate acts. 18 U.S.C. §§ 1962, 1961(5). The predicate acts Dillard alleged all depended on violations of the antitrust laws. Dillard's failure to establish an antitrust violation requires summary judgment on the RICO claims as well.

**D. Denial of Dillard's Preliminary Injunction**

On July 27, 1994, Dillard moved for a preliminary injunction proscribing monopolization and barring the enforcement of arbitration clauses if brokerage firms required traders to sign them as a precondition to trading in securities. The district court denied the injunction without entering findings of fact or conclusions of law, as required by Fed. R. Civ. P. 52(a). Dillard appeals the denial of his motion and the failure to enter findings of fact and conclusions of law. We have jurisdiction over the ruling on the preliminary injunction.[3] We review the district court's denial of a preliminary injunction for abuse of discretion. Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991).

The prerequisites for a preliminary injunction are:

> (1) substantial likelihood of success on the merits; (2) irreparable injury; (3) the threatened injury outweighs the damage the injunction may cause the opposing party; and (4) no adverse effect on the public interest.

Id.

---

[3] After the district court denied Dillard's motion for a preliminary injunction, Dillard timely filed motions for new trial and amendment of the judgment under rules 52(b) and 59. The district court denied these motions on March 27, 1995, the same date on which it issued the final orders forming the basis of this appeal. Dillard again timely moved for new trial or reconsideration under rules 52(b) and 59, which motions the district court again denied. Dillard then timely appealed to this court. Furthermore, while the preliminary injunction is moot with regard to SIA, it is not moot with regard to Merrill Lynch and Security Pacific.

10

Dillard cannot prove irreparable injury because he has an adequate remedy at law--namely, arbitration and this action for damages--and because he waited nearly six years to request injunctive relief, strongly implying that delay was not causing irreparable harm. See, e.g., Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1377 (9th Cir. 1985) (long delay implied lack of irreparable harm in newspaper's action for Sherman Act antitrust violation). As our discussion above demonstrates, Dillard also cannot prove substantial likelihood of success on the merits.

When it denied the injunction, the district court failed to enter findings of fact and conclusions of law, as required by Fed. R. Civ. P. 52(a). Dillard timely filed motions under Rule 52(b) and 59, asking the court to reconsider or clarify its ruling on the preliminary injunction, and also filed a motion for partial summary judgment. The district court denied these motions after entering findings of fact and conclusions of law in its final orders of March 27, 1995, the orders from which Dillard now appeals. These findings of fact and conclusions of law suffice under Rule 52(a).

**II.**

For the foregoing reasons, we AFFIRM the orders of the district court (1) compelling arbitration with Merrill Lynch, Security Pacific, and Jenkens & Gilchrist; (2) granting summary

11

judgment to SIA; and (3) denying Dillard's motions for a preliminary injunction and partial summary judgment.

AFFIRMED.