Kenneth LINDEMANN, Jeff Lindemann,
and Ronnie Terrall, d/b/a
Lindemann Farms, Plaintiffs-Appellees,

v.

ELI LILLY AND COMPANY,
Defendant-Appellant.

No. 86–1086.

United States Court of Appeals,
Fifth Circuit.

May 8, 1987.

John Harrell Feldt, Houston, Tex., Barbara A. Goolsby, Midland, Tex., for defendant-appellant.

Roddy Harrison, Pecos, Tex., for plaintiffs-appellees.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this case we are confronted with a challenge to the validity of a limitation of damages clause contained in a sales agreement for the purchase of herbicide. Appellant questions the sufficiency of the evidence supporting the jury verdict and the district court's conclusion that the contractual limitation of damages was unconscionable. We affirm in part, reverse in part, and render.

The Lindemann Farms cotton crop fared badly in 1984. This was apparently due to lack of weed control which produced a yield far below expectations. That year, and every year previous since the early 1960's, the Lindemanns used a herbicide called Treflan manufactured by Eli-Lilly and Co. (the "company" or "appellant").

The Lindemanns obtained a judgment in the district court against Eli Lilly for breach of express warranty.[1] The jury found that the Lindemanns complied with all conditions precedent for recovery under the express warranty. The jury also found that the Treflan failed to control the weeds on 827 of the approximately 1,000 acres upon which that product was used. Of the $156,000 damage award, $6,000 represented the difference between the value of the Treflan if it had been as warranted and the value of the Treflan as delivered.[2]

In its motions for judgment notwithstanding the verdict and new trial, appellant asserted that insufficient evidence underlay the jury's findings on several theories of liability and contested the award of consequential damages because such dam-

---

1. The Company's express warranty provides:
   Treflan will control the weeds and grasses as indicated on its current label when used according to label directions and subject to the following limitations:
   1. Purchaser must notify Elanco promptly if a lack of satisfactory control occurs. Notice must be given within ninety days after the first planting or after application of TREFLAN to the treated crop, whichever occurs later.
   2. An Elanco representative must be satisfied that Purchaser used TREFLAN according to the label directions and must visually observe unsatisfactory control of weeds in the field.

3. The Purchaser must provide Elanco representative with an invoice or other satisfactory record which shows the price and quantity of TREFLAN purchased.
   4. Elanco's liability will be limited to a refund of the purchase price of the TREFLAN applied to the acreage on which weed control was not satisfactory or, at the option of the Purchaser, a refund of an equivalent amount of TREFLAN.
   5. Void outside the USA.

2. The remaining damages were for: lost yield— $48,000; chopping costs—$66,000; and cultivating costs—$36,000. The district court concluded that the jury's award of $35,000 incorporating costs was unsupported by the evidence.

ages had been contractually disclaimed. The district court, while granting judgment n.o.v. on the Lindemanns' claims of negligence and implied warranty, approved recovery on breach of the express warranty covering Treflan. The court further held that although the company contractually excluded recovery of consequential damages under Section 2–719(3) of the Uniform Commercial Code, Tex.Bus. & Comm.Code Ann. § 2.719(c) (Vernon 1968), such an exclusion would, as a matter of law, be unconscionable in this case.

## I.

We first review the sufficiency of evidence to support the jury's findings that a) the Lindemanns applied Treflan according to the product label[3]; and b) that a breach of the express warranty proximately caused economic injury.

Recovery of any damages requires a finding that the Lindemanns used the Treflan "according to the label instructions." *See Veretto v. Eli Lilly & Co.*, 369 F.Supp. 1254, 1256 (N.D.Tex.1974); *Elanco Products Co. v. Akin-Tunnell*, 516 S.W.2d 726, 731 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). We cannot agree with appellant's contention that there is no evidence from which the jury could have concluded that the Lindemanns followed the label instructions in applying Treflan to their cotton field. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Appellant's only claim of failure to follow recommended use instructions is that the Lindemann Farms used a "split application" in contravention of label instructions. That is, of the one and one-half pints per acre recommended dosage, one-half (i.e., $\frac{3}{4}$ ths of a pint) was applied and incorporated in one direction, and the remaining herbicide was then applied and incorporated in the opposite direction. Appellant presented testimony that this method is contrary to the directions attached to each container of Treflan and that such a procedure would be discouraged because it would "bury"

the chemical on the second sweep of the field, rendering weed control ineffective.

■ Contrary to these contentions, we read the product directions to permit a "split application." The instructions recommend double incorporation:

*Incorporation Before Planting*
TREFLAN must be incorporated one time within 24 hours after application. Then any time prior to planting, a second incorporation is necessary, this time running the equipment in a different direction from the first. You should incorporate the TREFLAN uniformly into the top 2 or 3 inches of the final seedbed.

The "application" directions, however, do not reveal any specific directive to apply Treflan only once. In at least four instances, covering general application and specific application procedures for cotton crops, it is nowhere stated that one application is required. On the other hand, the Lindemanns testified that they were instructed to use this procedure by Jimmy McAnally, Manager of W.R. Grace & Co., Eli Lilly's local distributor of Treflan. While McAnally did not confirm that he recommended "double" application, in his testimony he emphasized that uniform application was necessary and double incorporation would help effect uniformity. Moreover, Dr. Stanley Parka, an Eli Lilly physiologist, acknowledged that the split application was an "acceptable," but not a recommended, method of applying Treflan to achieve the requisite uniformity. Because no specific instructions were given to apply Treflan only once, we hold that a jury could reasonably conclude that "split application" was consistent with the product directions which sought uniform application of Treflan.

■ The appellant also challenges the jury's finding that the Lindemanns' damages were proximately caused by the company's breach of express warranty. Appellant identifies thirteen possible causes of poor weed control in the 1984 cotton crop, ten of which relate to improper application of Treflan by the Lindemanns. The other

---

**3.** Appellant does not dispute that the Lindemanns complied with all other conditions prece-

dent to recovery under the Treflan warranty. *Supra* n. 1.

asserted hazards to the crops were insects, poor weather at harvest time, and weed pressure on fields that had not been successfully cultivated in eight years. Appellant strenuously argues that, in light of these multiple sources of unsatisfactory crop yield, the Lindemanns did not meet their burden of proof that a defect in the Treflan itself proximately caused the damaged crops. Appellants' emphasis is misplaced. While a product defect must be found in an action for breach of implied warranty, *Clark v. De Laval Separator Corp.*, 639 F.2d 1320 (5th Cir.1981), such a showing is not required under Texas law in an action for breach of express warranty where the seller does not specifically warrant against a product defect.

■ Successful assertion of breach of an express warranty requires: 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, e.g. that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer. *General Supply & Equipment Co. v. Phillips*, 490 S.W.2d 913, 917 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). Unlike an action for breach of an implied warranty which evolved from tort liability, an action for breach of an express warranty sounds in contract. *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex.Civ.App.—Dallas 1980, no writ). Section 2–313 of the Texas Uniform Commercial Code, Tex.Bus. & Comm.Code Ann. 2.313 (Vernon 1968), defines an express warranty as "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain...." To determine the precise elements of an action for breach of express warranty, we must examine the specific contract and the warranties made under that contract. *See Hodge Boats & Motors v. King*, 578 S.W.2d 890, 891 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.) (where the defendant warranted a motor to be "free from defects in

material and workmanship," plaintiff must offer proof of defect in action for breach of express warranty); *W.G. Tufts & Son v. Herider Farms, Inc.*, 485 S.W.2d 300, 303 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.) (a showing that the herbicide purchased was different from what the salesman had verbally promised the product to be was sufficient to show breach of express warranty); *Elanco Products Co. v. Akin-Tunnell*, 474 S.W.2d 789, 792 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.) (cause of action for breach of express warranty does not fail because plaintiff does not prove a product defect; plaintiff need only show failure to comply with terms of warranty).

■ Although it was thus unnecessary under the warranty to prove Treflan itself defective, Texas law requires the Lindemanns to demonstrate a proximate cause between the breach of warranty and their crop losses. Ten of appellant's aforementioned alternative causes of damage are precluded by the jury finding that the Lindemanns properly applied Treflan. The remaining alternative causes of crop loss—insects, poor weather and weed pressure—represent defensive hypotheses which the jury was free to believe or disbelieve as the principal cause of the Lindemanns' 1984 crop problems. Because there were undeniably excessive weeds despite proper use of the Treflan the jury was entitled to find that breach of appellant's express warranty resulted in damages.

## II.

The second issue in this appeal concerns the validity of the company's contractual exclusion of consequential damages under Texas UCC § 2–719(3), Tex.Bus. & Comm. Code Ann. § 2.719(c) (Vernon 1968). That section provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

The company expressly warranted Treflan and limited its liability for breach of that warranty to refund of the purchase price, in accordance with § 2–719(3). The district court determined, however, that the limitation was unconscionable and that consequential damages could be awarded to plaintiff.

■ In this conclusion, the district court erred. The issue of unconscionability was raised by the district court *sua sponte* during the charge conference on the eve of submitting the case to the jury. Well in advance of trial, appellant had repeatedly informed the Lindemanns that it intended to rely on its contractual clause limiting damages. Plaintiffs, however, never asserted unconscionability in any pleading nor did they seek to introduce evidence on that issue to the trial court. One Texas court has held a defendant entitled to summary judgment on its limitation of damages clause where the plaintiff failed to submit any evidence of unconscionability in response to the summary judgment motion. *Ganda, Inc. v. All Plastics Molding, Inc.,* 521 S.W.2d 940, 941–42 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). *Ganda* implicitly recognizes two principles pertinent to the determination of unconscionability. First, the court must have evidence of unconscionability before it can support any finding on that issue.[4] Second, a defendant is entitled to fair notice that a portion of its contract will be challenged for unconscionability.[5] The trial court's procedure in this case fundamentally disadvantaged the appellant and deprived it of a defense that, according to *Ganda,* entitled the defendant to judgment in the procedural posture here presented.

■ Moreover, to the extent that the trial court relied on record evidence to determine unconscionability, its finding does not comport with the Uniform Commercial Code. Section 2–302(1) provides the test for unconscionability:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Tex.Bus. & Comm.Code Ann. § 2.302(a) (Vernon 1968). To determine whether a contract is unconscionable a court must look to the circumstances surrounding the agreement, the alternatives, if any, which were available to the parties at the time of making the contract, the nonbargaining ability of one party, and whether the contract is illegal or against public policy. *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex. Civ.App.—Texarkana 1975, no writ). Generally, contracts are rendered unconscionable by procedural abuse arising in contract formation, such as the inability of one party to bargain; and by abuse concerning substantive contract terms, such as whether printed terms of a form contract are so one-sided as to be unreasonable. *Id.; see also* White & Summers, *supra* n. 4, §§ 4–3, –6.

■ The district court, relying first on procedural unconscionability, held that the

---

**4.** Section 2–302(2) recognizes that the court must have evidence of "commercial setting, purpose and effect" to aid it in reviewing a claim of unconscionability. Tex.Bus. & Comm.Code Ann. § 2.302(b) (Vernon 1968). Thus there must be sufficient evidence of unconscionability in the record before a clause, such as the one limiting liability in this case, will be found unconscionable. *See, e.g., FMC Finance Corp. v. Murphree,* 632 F.2d 413, 419 (5th Cir.1980) (Illinois Law); *Earman Oil Co. v. Burroughs Corp.,* 625 F.2d 1291, 1299 (5th Cir.1980). Moreover, the party claiming unconscionability carries the burden of proof. *Id.; Ganda, supra. See generally* J.J. White and R. Summers, *Handbook of the Law*

*Under the Uniform Commercial Code* § 12–11, at 473 (2d ed. 1980).

**5.** We need not consider whether under § 2–302(2) a court may raise the unconscionability issue *sua sponte.* Even if such an unusual procedure is contemplated by the UCC, and we have found no authority to suggest it is, the court must afford the affected party an opportunity to introduce evidence of commercial setting, purpose and effect. Tex.Bus. & Comm. Code Ann. § 2.302(b). Presumably, such an opportunity is afforded only after the claim of unconscionability has been made.

Lindemanns did not bargain for their purchase of the Treflan and therefore had no choice but to accept the contractual exclusion of consequential damages. This finding ignores the commercial context of this transaction. The Lindemanns are not retail customers purchasing consumer goods. They are experienced and sophisticated farmers who operate a 4,000–acre tract, 1,000 acres of which are each year devoted to cotton production. Moreover, Lindemann Farms has been using the herbicide Treflan since the early 1960's. Such history establishes a course of dealing between the parties and leads to the inference that the Lindemanns did know, or should have known, of the contractual limitation of damages. For over twenty years, the exclusion of consequential damages was not a deterrent to the Lindemanns' patronage of Treflan. Moreover, an arm's-length relationship is presumed in a commercial transaction covered by the UCC. *Earman Oil Co. v. Burroughs Corp.*, 625 F.2d 1291 (5th Cir.1980) (interpreting Florida law). These factors indicate that no procedural unconscionability exists in this case. *See Billings v. Joseph Harris Co.*, 27 N.C.App. 689, 220 S.E.2d 361 (1975) (relying upon "essentially commercial" nature of buyer's farming operation in concluding that a similar contractual provision was conscionable). *But see Martin v. Joseph Harris Co.*, 767 F.2d 296 (6th Cir.1985) (finding a similar exclusion of consequential damages in a commercial context unconscionable under Michigan law).

■ The district court also apparently relied on substantive unconscionability in determining that the defendant knew plaintiffs would use the Treflan to cut down on weeding cost, and to "seek such an exclusion of consequential damages in this situation would be patently unfair and unconscionable." One Texas court declared that this type of unfairness results when "no man in his senses and not under a delusion would enter into and ... no honest and fair person would accept" a contract on such terms. *Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 554 (Tex.Civ.App.—Dallas 1968, no writ). But as the commentary to the UCC itself states, the principle of unconscionability is one of preventing oppression and unfair surprise, *not* the disturbance of allocation of risks because of superior bargaining power. Tex.Bus. & Comm.Code Ann. § 2.302 comment 1. Clauses limiting or excluding consequential damages under UCC § 2–719 "are merely an allocation of unknown or undeterminable risks." Tex.Bus. & Comm.Code Ann. § 2.719 comment 3. The decision of a herbicide manufacturer to limit damages would seem, in the absence of other evidence, abundantly to fulfill this risk-allocation function, because the uncertainties inherent in the agricultural business are legion, and many of them, such as planting, cultivating, harvesting and marketing decisions, are uniquely within the control of the farmer—the Treflan customer. *See Monsanto Agricultural Products Co. v. Edenfield*, 426 So.2d 574 (Fla.Dist.Ct.App.1982); *Kleven v. Geigy Agricultural Chemicals*, 303 Minn. 320, 227 N.W.2d 566 (1975). *Compare Majors v. Kalo Laboratories, Inc.*, 407 F.Supp. 20 (M.D.Ala.1975) (finding clause excluding consequential damages unconscionable under Alabama law where manufacturer uncertain of a new product's effectiveness and where it failed to notify buyer of experimental nature of product). Finally, § 2–719(3) itself permits a finding of *prima facie* unconscionability only where a merchant attempts to limit damages for a personal injury in the sale of a consumer product. The trial court's *ad hoc* finding of facial unconscionability in a commercial sale does not reconcile with this distinction.

We have found no Texas case holding unconscionable a contract clause excluding consequential economic damages on the sale of a commercial product. To the contrary, *Asgrow Seed Co. v. Gulick*, 420 S.W.2d 438 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.), involving a transaction entered into prior to the effective date of the Texas UCC, held that a seed company had validly limited the farmer-buyer's remedy for breach of warranty to return of the purchase price. The state of the evidence before the trial court does not support a different finding in this case.

Accordingly, we affirm the judgment insofar as sufficient evidence supports the jury's findings of breach of warranty, reverse the district court's finding of unconscionability, and render judgment in favor of Lindemann Farms for $6,000—the amount of actual damages calculated by the jury under Tex.Bus. & Comm.Code Ann. § 2.714(b).

AFFIRMED IN PART, REVERSED IN PART and RENDERED.