Dr. Joe and Dawn MORRISON, Kelly Robbins, Randy and Janet Councill, Dan and Helen Higgins, Ron and Karen Green, Victor and Cathy Brook, Dr. Marion and Jean McMurtrey, Dan and Helen Higgins, Dr. T.M. and Cynthia Hughes, Richmond Eagle Corp., Dave and Rose Roberts, Dr. Richard and Linda Werner, Tony and Mary Ann Cutaia, Warren and Donna Bird, Tom and Kye Yeaman, and Wade and Debbie McKay Plaintiffs,

v.

AMWAY CORPORATION, Rich Devos, Jay Vanandel, Dick Devos, Steve Van Andel, Doug Devos, Bob Kerkstra, JA-RI Corporation, Dexter Yager, Individually and D/B/A Yager Enterprises and Internet Services Corporation, Jeff Yager, Donald R. Wilson, Individually and D/B/A Wow International and Wilson Enterprises, Inc., Randy and Valorie Haugen, Individually and D/B/A Freedom Associates, Inc., Freedom Tools, Inc. and All Star Production Company, John Sims, Individually and D/B/A Sims Enterprises, Randy and Susan Walker, Individually and D/B/A Walker, International, Mark and Martha Hughes, Bill and Alyssa Bergfeld, Individually and D/BA as Bergfeld International, Inc., Jody Victor, Individually and D/BA Jevi Corporation, Mark Cordner, Billy Zeoli, Individually and D/B/A Gospel Films, and Dennis James Defendants.

Amway Corporation, Ja–Ri Corporation, Bob Kerkstra, Amway Distributors Association, Dexter Yager, Sr., D & B Yager Enterprises, Inc., Jeffrey S. Yager, Internet Services Corporation, Inc., Donald R. Wilson, Wilson Enterprises, Inc., Wow International, Inc., Randy Haugen, Valorie Haugen, Freedom Tools, Inc., Freedom Associates, Inc., John W. Sims, Sims Enterprises, Inc., Sims Inc., Plaintiffs,

v.

Cecelia Musgrove, Jeffrey G. Musgrove, Defendants.

Ja–Ri Corporation, Bob Kerkstra, Amway Distributors Association, Dexter Yager, Sr., D & B Yager Enterprises, Inc., Jeffrey S. Yager, Internet Services Corporation, Inc., Donald R. Wilson, Wilson Enterprises, Wow International, Inc., Randy Haugen, Valorie Haugen, Freedom Tools, Inc., Freedom Associates, Inc., John W. Sims, Sims Enterprises, Inc., Sims Inc., Amway Corporation, Plaintiffs,

v.

Mark D. Pruitt and Deanna F. Pruitt Defendants

Nos. CIV.A. H–98–0352, CIV.A. H–98–1695, H–98–3291.

United States District Court, S.D. Texas. Houston Division.

Oct. 15, 1998.

Kevin G Corcoran, Brock Cordt Akers, Phillips & Akers, Houston, TX, for Dr Joe Morrison, Dawn Morrison, Kelly Robbins, Randy Councill, Janet Councill, Dan Higgins, Helen Higgins, Ron Green, Karen Green, Victor Brook, Cathy Brook, Dr

Marion McMurtrey, Jean McMurtrey, Dr T M Hughes, Cynthia Hughes, Richmond Eagle Corp, Dave Roberts, Rose Roberts, Dr Richard Werner, Linda Werner, Tony Cutata, Mary Cutata, Warren Bird, Donna Bird, Tom Yeaman, Kye Yeaman, Wade McKay, Debbie McKay, plaintiffs.

Edward B. McDonough, Jr., Mark S Dube, McDonough & Assoc., Houston, TX, William J Abraham, Rick J Abraham, Abraham Law Offices, Columbus, OH, for D&B Yager Enterprises, Inc., Wilson Enterprises, Inc., Freedom Assoc., Inc., Sims Enterprises, Inc., Sims, Inc., consolidated plaintiff.

Edward B. McDonough, Jr., Mark S Dube, McDonough & Assoc., Houston, TX, William J Abraham, Rick J Abraham, Abraham Law Offices, Columbus, OH, William R Culp, Jr., Culp Elliott & Carpenter, Charlotte, NC, for Wow Intern. and Wilson Enterprises, Inc., consolidated plaintiff.

Thomas W Taylor, Andrews and Kurth, Houston, TX, Sharon D Grider, Amway Corporation, Legal Counsel, Ada, MI, John C Peirce, P Todd Mullins, Howrey & Simon, Washington, DC, for Amway Corp., Bob Kerkstra.

Thomas W Taylor, Andrews and Kurth, Houston, TX, for Rich Devos, Jay Vanandel, Dick Devos, Steve Van Andel, Doug Devos, Dexter Yager, Jeff Yager, Donald R Wilson, Randy Haugen, Valorie Haugen, Freedom Tools Inc, All Star Production Company, John Sims, Randy Walker, Susan Walker, Mark Hughes, Martha Hughes, Alyssa Bergfeld, Jody Victor, Mark Coroner, Billy Zeoli, Dennis James, defendants.

Robert L DeJong, Miller Canfield Paddock & Stone, Grand Rapids, MI, Thomas W Taylor, Andrews and Kurth, Houston, TX, for JA–RI Corporation, defendant.

James L Gascoyne, Collins & Gascoyne, Houston, TX, Thomas W Taylor, Andrews and Kurth, Houston, TX, for Bill Bergfeld.

Edward B McDonough, Jr, McDonough & Associates, Houston, TX, Rick J Abraham, Abraham Law Offices, Columbus, OH, for Internet Services Corp., defendant.

Frank W Mitchell, Maloney Martin & Mitchell, Houston, TX, for Mark Pruitt, Deanna F Pruitt, Jeffrey NMI Musgrove, Cecelia Musgrove, defendants.

## MEMORANDUM OPINION AND ORDER

HARMON, District Judge.

Pending before the Court is Defendants' Motion to Stay Pending Arbitration. (Instrument # 51.) Upon reviewing the record, the memorandum in support, (Instrument # 52), the responses (Instruments # 57–59), and the applicable law, the Court concludes that the motion to stay should be **GRANTED**.

## I. BACKGROUND

The Plaintiffs [1] are distributors of Amway Corporation ("Amway"). Amway is a multinational company with sales in excess of $5 billion that sells household products. Amway distributes these products a "network marketing" method by which hundreds of thousands of independent distributors constantly recruit new distributors, or "down-liners." The down-liners are encouraged to purchase and use Amway products and motivational materials themselves and to recruit their own new distributors. A distributor's success is thus dependent upon building a large base of down-liners. *See, e.g., Amway Distributors Benefits Ass'n v. Federal Ins. Co.,* 990 F.Supp. 936, 939 (W.D.Mich.1997); *Hanrahan v. Britt,* 174 F.R.D. 356, 359 (E.D.Pa. 1997).

In this case, the Plaintiffs, *inter alia,* have a disagreement with how profits are determined with regard to the motivational and other business support materials.

---

1. Although some of the distributors were defendants in the actions recently consolidated, they will be aligned and referred to as Plaintiffs in this Memorandum Opinion.

The Plaintiffs have sued Amway as well as other distributors in their respective "up-line" for a myriad of claims ranging from defamation to RICO. Three suits filed in this District have been consolidated.

The Defendants have moved to stay this litigation based upon an arbitration clause they contend is in force between the parties. In response, the Plaintiffs concede that the clause was entered into by roughly one-third of the Plaintiffs, but that it is not in effect as to all the Defendants. The Defendants also contend that even if it was entered into, it does not apply, and in any event, it is unconscionable.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," which requires that "questions of arbitrability ... be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir.1998). "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," a concern that "requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

■ Pursuant to § 3 of the FAA, 9 U.S.C. § 3,[2] a court must generally stay

proceedings pending arbitration. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 118 S.Ct. 1761, 1769 n. 6, 140 L.Ed.2d 1070 (1998) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). A district court's decision whether to grant a stay is ordinarily reviewed for abuse of discretion. *Save Power Limited v. Syntek Finance Corp.*, 121 F.3d 947, 948 (5th Cir. 1997). The FAA, however, does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration. *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344, 346 (5th Cir.1997). Likewise, the mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration agreement. *Id.*

■ Thus, the Court must "first determine whether there is a written agreement to arbitrate"; then, "whether any of the issues raised are within the reach of that agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir.1993); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (a court is required to determine whether the parties agreed to arbitrate that dispute).

### A. Was there a written agreement to arbitrate?

In this case, the Plaintiffs concede that about one-third of them signed the arbitra-

---

**2.** § 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved

in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

tion agreement. There is no dispute that a written agreement to arbitrate exists as to these Plaintiffs. The rest of the Plaintiffs contend that they did not enter into a written agreement to arbitrate. There is no dispute, however, that each entered into a written distributorship agreement.

An Amway distributorship agreement distributor must be renewed annually and comes in three forms: (1) an original distributorship agreement for new distributors; (2) an automatic renewal form executed only once, but renewed pursuant to an agreement that Amway will thereafter bill the distributor's credit card the appropriate annual fees; and (3) a written continuation form that is executed annually.

In all three instances, the Plaintiffs agreed "to comply with the Amway Sales and Marketing Plan and to observe and abide by the Code of Ethics and Rules of Conduct of Amway Distributors, and all other rules, requirements and regulations *as they are set forth from time to time in official Amway literature.*" *See, e.g.,* Instrument # 26, Ex. "D," "F," "G" (emphasis added). In September 1997, Amway amended the Rules of Conduct to include arbitration [3] and modified the original application and intent to continue forms to include an arbitration provision for "any . . . claim or dispute arising out of or relating to [an] Amway distributorship, the Amway Sales and Marketing Plan, or the Amway rules of Conduct (including any claim against another Amway distributor, or any such distributor's officers, directors, agents or employees, or against Amway Corporation, or any of its officers, directors, agents or employees)." *See* Instrument # 26, Ex. "A," "B." Amway also mailed an acknowledgment form to the automatic renewal Plaintiffs that stated:

Dear Distributor,

Every year you and thousands of other distributors enjoy the convenience of having you Amway business renewed automatically. It's easy, of course, and you get the benefit of timely renewal without the paperwork.

Because of some recent changes to the Intent to Continue (renewal) Form as well as the introduction of the new Business Support Material Arbitration Agreement (BSMAA), we need you to review the changes and sing the acknowledgment on the back of this letter. *While these changes automatically become part of your agreement with Amway, we wanted to make sure you are aware of them.*

(Instrument # 43, Ex. "1.") (emphasis added).

■ In response, the automatic renewal Plaintiffs argue that Amway had superior bargaining power and made this modification unilaterally. Plaintiffs argue that the contract was in effect an unconscionable contract of adhesion. However, adhesion contracts are not automatically void. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154 (5th Cir. 1992). Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,'" the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Mitsubishi Motors Corp.,* 473 U.S. at 627, 105 S.Ct. at 3354; *Dillard,* 961 F.2d at 1154 (party seeking to avoid adhesion contract generally must show that it is unconscionable).

■ "Unconscionability" has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498–99 (Tex.1991) (Gonzalez, J., concurring); *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.— San Antonio 1996, no writ) To determine whether a contract is unconscionable a court must look to the circumstances sur-

---

**3.** *See* Instrument # 13 (from Adversary 98– 3291), Exhibit A–1, p. 66.

rounding the agreement, the alternatives, if any, which were available to the parties at the time of making the contract, the nonbargaining ability of one party, and whether the contract is illegal or against public policy.

■ Although no single test exists to determine if a contract is unconscionable, two questions can provide guidance: (1) How did the parties arrive at the terms in controversy?; and (2) Are there legitimate commercial reasons which justify the inclusion of these terms? *DeLanney*, 809 S.W.2d at 499 (Gonzalez, J., concurring); *Pony Express*, 921 S.W.2d at 821. The first question, described as the procedural aspect of unconscionability, is concerned with assent and focuses on the facts surrounding the bargaining process. *See Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 203 (5th Cir.1987); *DeLanney*, 809 S.W.2d at 499 (Gonzalez, J., concurring); *Pony Express*, 921 S.W.2d at 821. The second question, described as the substantive aspect of unconscionability, is concerned with the fairness of the resulting agreement. *See Lindemann*, 816 F.2d at 203; *DeLanney*, 809 S.W.2d at 499 (Gonzalez, J., concurring); *Pony Express*, 921 S.W.2d at 821. Under Texas law, Plaintiffs must prove both substantive and procedural unconscionability to avoid the arbitration provision. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir.1988).

■ The answers to these two questions demonstrate that Plaintiffs' unconscionability claim fails. First, the Plaintiffs have failed to demonstrate procedural unconscionability. The Plaintiffs make much of the overwhelming bargaining position of Amway, but, "the principle of unconscionability is one of preventing oppression and unfair surprise, not the disturbance of allocation of risks because of superior bargaining power." *Id.; DeLanney*, 809 S.W.2d at 498 (Gonzalez, J., concurring) (Disparity of bargaining power, while relevant, is not the litmus test for unconscionability).

Furthermore, unlike the classic unconscionability case, the Plaintiffs are not unsophisticated parties that were beguiled into entering a fundamentally outrageous contract that they now wish to avoid. *See Lindemann*, 816 F.2d at 204. To the contrary, the Plaintiffs are rather sophisticated business people who have for some time operated an Amway distributorship. *See id.* The plaintiffs have presented no evidence that the arbitration provision was not only a result of Amway's alleged "overreaching or sharp practices" but also as a result of the Plaintiffs' own "ignorance or inexperience." *Westinghouse Elec. Corp.*, 844 F.2d at 1184. Although Plaintiffs make much of the automatic renewal procedure, there is nothing in the record that would suggest that these business people were either ignorant or inexperienced. *See id.; Lindemann*, 816 F.2d at 204.

Similarly, with regard to substantive unconscionability, the Plaintiffs have failed to produce any evidence that the agreement to arbitrate itself was somehow unfair or oppressive. *See Dillard*, 961 F.2d at 1154. Substantive unconscionability only "results when 'no man in his senses and not under a delusion would enter into and … no honest and fair person would accept' a contract on such terms." *Lindemann*, 816 F.2d at 204. Plaintiffs have failed to demonstrate that the arbitration provision at issue falls within that category.

At bottom, the Plaintiffs have not demonstrated that the arbitration provision is unconscionable. Thus, a viable written agreement to arbitrate exists between Amway and the Plaintiffs.

**B. Are the claims subject to the arbitration clause?**

■ In determining whether the issues raised are within the reach of the arbitration agreement, this circuit distinguishes between broad and narrow arbitration clauses. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). If the clause is broad, the action should be stayed and the arbitrators per-

mitted to decide whether the dispute falls within the clause. *Id.* (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir.1985)). If the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause. *Id.* However, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration," and "[t]he weight of this presumption is heavy" *Id.* (quoting *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 635–36 (5th Cir.1985)).

 In the case *sub judice*, the arbitration provision requires that distributors, after completing the Amway conciliation process:

> submit any remaining claim or dispute arising out of or relating to my Amway distributorship, the Amway Sales and Marketing Plan, or the Amway Rules of Conduct (including any claim against another Amway distributor ... or against Amway Corporation, or any of its officers, directors, agents or employees) to binding arbitration in accordance with the Amway Arbitration rules ....

(Instrument # 13 (from Adversary 98–3291), Exhibit A–1, p. 66.)

The above arbitration clause contains the "any dispute" language; thus, it is of the broad type. *Complaint of Hornbeck Offshore*, 981 F.2d at 755; *see also Sedco*, 767 F.2d at 1144 (clause governed "any dispute or difference between the parties"); *Mar–Len*, 773 F.2d at 634 (clause

governed "any dispute ... with respect to the interpretation or performance of" the contract). Furthermore, it is undisputed that this suit involves claims brought by distributors against distributors and against Amway Corporation.[4] Because Plaintiffs' "allegations of fraud in the inducement of the arbitration clause itself" have failed, as discussed *supra*, arbitration must proceed because "the arbitration clause on its face appears broad enough to encompass the party's claims." *Complaint of Hornbeck Offshore*, 981 F.2d at 755; *Sedco*, 767 F.2d at 1148.[5] Accordingly, the Court

**ORDERS** that:

A. Defendants' Motion to Stay Pending Arbitration is **GRANTED**;

B. This case is **STAYED** pending arbitration;

C. This case is administratively closed;

D. The parties may reinstate this case to the Court's active docket with an appropriate motion within thirty days of the disposition of the arbitration.

4. It appears that the Plaintiffs' claims against the unserved defendants, Billy Zeoli and Gospel films, are based upon an agency theory; and thus, the arbitration clause equally applies. However, even if the claims were somehow not in that capacity, the case should still be stayed until resolution of the entire matter. *M & I Elec. Indus., Inc. v. Rapistan Demag Corp.*, 814 F.Supp. 545 (E.D.Tex.1993) (stays of nonarbitrary causes of action are within the court's discretion to control its docket) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir.1987)).

5. Amway's promulgation of a separate arbitration provision specifically for business materials does not impact this holding. The scope of the two provisions overlap and are not mutually exclusive. The business material arbitration clause does not impact the fact that "the [general] arbitration clause on its face appears broad enough to encompass the [Plaintiffs'] claims." *See Complaint of Hornbeck Offshore*, 981 F.2d at 755.