*705 LITTLE, District Judge:
Today we consider a consolidated appeal by Defendants-Appellants from the district court’s order in favor of Plaintiffs-Appellees, compelling arbitration. Defendants-Appellants include the following parties: John D. Orr, Betty F. Sanford, Frankie L. Moore, Jimmie Martin, and Nathaniel Henley (collectively referred to as the “Appellants”). Plaintiffs-Appellees are: Fidelity National Corporation d/b/a Republic Finance, Inc. (“Republic Finance” or the “Lender”), and American Heritage Life Insurance Company (“American Heritage”) and First Colonial Insurance Company of Florida (“Colonial Insurance”) (collectively, the “Insurers”).[1] The district court granted Plaintiffs-Ap-pellees’ petition to compel arbitration under § 4 of the Federal Arbitration Act (the “FAA”), stayed the pending state court proceedings, and ordered the case closed. 9 U.S.C. § 4.
Although the Appellees are the beneficiaries of the district court’s ruling that compelled arbitration, they are appellants as to one issue: Whether this court has jurisdiction to entertain Appellants’ appeal. This issue will be disposed of first, and consideration of the portions of the district court’s order that the Appellants find wanting will follow.
We ultimately hold that, as a matter of law, the district court order compelling arbitration, which also stays the underlying state court proceedings and closes the case in federal court, is an immediately appealable, final decision under the ambit of 9 U.S.C. § 16(a)(3) of the FAA. As such, this court has jurisdiction to entertain the instant appeal. We also conclude that the district court’s order should be affirmed.
I. FACTS AND PROCEEDINGS
Over the past several years, Appellants obtained consumer loans from Republic Finance, which included the purchase of credit life and credit disability insurance. Specifically, when Appellants entered into loan transactions with Republic Finance, Republic Finance sold Appellants disability fife insurance to insure the credit against the risks of sickness and death. The Insurers wrote and issued the insurance policies that Republic Finance sold to Appellants.
At the loan closings, the borrowing Appellant and Republic Finance signed a document entitled “Arbitration Agreement” (the “Agreement”) to which the Insurers were not signatories. Appellants do not contend that Republic Finance failed to prepare the Agreement in clear language and legible print, or that Republic Finance neglected to place the Agreement on a separate page, that is, apart from the loan transaction documents. Each Agreement contains the following language:
[A]ny claim, dispute or controversy between undersigned ... and lender (or the employees, agents or assigns of lender) arising from or relating to the loan or any prior extension of credit by lender to any of the undersigned, insurance written in connection herewith, ... and whether in tort, contract, breach of duty (including but not limited to) any alleged fiduciary, good faith, and fair dealing duties, including but not limited to the applicability of this arbitration agreement, and the validity of the entire agreement shall be resolved by binding arbitration before one arbitrator in accordance with the Federal Arbitration Act, the expedited procedures of the commercial arbitration rules of the *706 American Arbitration Association, and this agreement.
The parties agree that Lender is engaged in interstate commerce, and the transaction is governed by the Federal Arbitration Act, 9 U.S.C. Section 1-16.
In the event either party files a suit of any kind in any court against the other, or if a counter or cross-claim is filed therein, the defendant or counter-defendant can have the suit stayed and the other party required to arbitrate under this agreement.
Directly above the date and signature lines, in bold, capital, readily legible letters, is the following language.
THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRATION AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.
Despite the clear language of the Agreements’ provisions mandating arbitration under the FAA and the commercial rules of the American Arbitration Association (“AAA”), Appellants commenced a civil action against Appellees in the Circuit Court of Clay County, Mississippi. Appellants sought monetary damages for, among other alleged transgressions, fraudulent misrepresentation in connection with the loan transaction, conspiracy to “sell credit life, credit disability, property and/or collateral protection insurance ... that was unnecessary and at an exorbitant premium far in excess of the market rate,” breach of implied covenants of good faith and fair dealing, breach of fiduciary duties, and allegations that the Insurers conspired with agents of Republic Finance to sell unnecessary insurance at inflated rates.
Appellees initiated independent actions in the United States District Court, Northern District of Mississippi, only seeking orders of the court to compel arbitration under the FAA, 9 U.S.C. § 1 et seq. and to stay the state court proceedings. After an appropriate analysis of the Appellants’ demands and the Appellees’ oppositions to them, the district court issued an order compelling arbitration in accordance with the Agreements, staying all related, state court proceedings, and closing the case. The district court determined that Appellants’ claims implicated substantially interdependent and concerted misconduct by both the non-signatory Insurers and the signatory Lender. The district court also concluded that: (1) the McCarran-Fergu-son Insurance Regulation Act, 15 U.S.C. §§ 1011-1015 (1999) (the “McCarran-Fer-guson Act”) did not reverse-preempt the FAA because Appellants failed to identify a Mississippi state law or statute that the FAA had invalidated, impaired, or superseded; (2) Appellees’ petition to compel arbitration in the district court did not amount to a compulsory counterclaim under rule 13(a) of the Federal Rules of Civil Procedure (the “FRCP”), which would have required Appellees to file the motion to compel arbitration in state court, and that § 4 of the FAA plainly authorized a party against whom litigation has been initiated to commence a separate, original action in federal district court to enforce an arbitration agreement; and (3) Appellants did not proffer sufficient evidence to support a jury trial demand for resolution of the factual issues surrounding the adoption of the Agreements. Of particular importance in the instant dispute is the fact that, in addition to compelling arbitration and staying the pending state court proceedings, the district court ordered the case closed but did not dismiss the action. The final, substantive paragraph of the district court’s order provides as follows: *707 “[T]his case is CLOSED.” Appellants timely filed notices of appeal.
II. JURISDICTION

A District Court Order That Compels Arbitration, Stays the Underlying State Court Proceedings, and Closes the Case is an Immediately Appealable, Final Decision Within the Contemplation of § 16(a)(3) of the FAA.

Section 16(a)(3) of the FAA provides as follows: “An appeal may be taken from a final decision with respect to an arbitration that is subject to this title.” 9 U.S.C. § 16(a)(3). That section preserves immediate appeal of any ‘“final decision’ with respect to arbitration,” regardless of whether the decision is favorable or hostile to arbitration. Id. The FAA does not, however, expressly define the term “final decision.” Appellees argue that this court lacks appellate jurisdiction because the district court did not issue an immediately appealable “final decision.” Specifically, Appellees maintain that because the district court’s order compelled arbitration and “closed” the case instead of compelling arbitration and “dismissing” the case, this court lacks jurisdiction to hear the appeal of the ruling of the district court. Appel-lees cite Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) for the proposition that “closing” a case neither ends the litigation oh the merits nor terminates the district court’s involvement in the matter, thereby precluding this court’s appellate jurisdiction over the dispute. 531 U.S. at 85, 121 S.Ct. at 519. Conversely, Appellants also rely on Green Tree, but for the proposition that, in the instant dispute, “closing” a case is the functional equivalent of “dismissing” it. Appellants argue that by compelling arbitration and “closing” the case, the district court issued an immediately appealable, final decision under § 16(a)(3) because the court’s order ended the entire litigation on the merits in that court, leaving nothing more for that court to do but execute the judgment. Id.
In Green Tree, the Supreme Court held that an order dismissing an action is a “final decision” within the traditional understanding of the term, even when the dismissal is in favor of arbitration and the parties could later return to court to enter judgment on an arbitration award. Id. at 85-88, 121 S.Ct. at 519-21. In reaching this result, the Supreme Court applied the well-established meaning of “final decision” as one that “ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.” Id. at 85; 121 S.Ct. at 519 (citing Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)), and Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (both quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). The Green Tree Court concluded that the reference in 9 U.S.C. § 16(a)(3) to “a final decision with respect to an arbitration that is subject to this title” authorizes appeals from final orders that grant or deny arbitration. Green Tree, 531 U.S. at 89, 121 S.Ct. at 521. No longer is it necessary to conduct an analysis of whether a lawsuit is an “independent” action, brought solely to enforce arbitration rights, or an action in which the request to arbitrate is “embedded” in a case that also raises substantive legal claims. Id. at 88, 121 S.Ct. at 520. By distinguishing the terms “dismiss” and “close” as they apply to disposition of a case, Appellees attempt to thwart the Court’s instruction in Green Tree to apply the well-established meaning of-“final decision.” Appellees contend that the standards for appeal from a dismissal are different from the standards for appeal from orders closing the case.
*708 There is no practical distinction between “dismiss” and “close” for purposes of this appeal. The application of each word results in a termination on the merits, leaving the judgment-rendering court with nothing more to do but execute the judgment. We hold that where a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is “final” within the contemplation of § 16(a)(3) of the FAA. Thus, we hold that this court has jurisdiction to entertain the instant appeal.
III. SUBSTANTIVE ISSUES
Appellants assert that the district court erred by: (1) finding that the McCarran-Ferguson Act did not reverse-preempt the application of the FAA to the instant case; (2) denying Appellants a trial by jury to decide the factual issues surrounding the validity of the Agreements; and (3) failing to declare the Agreements unenforceable because of the putative high cost of arbitration. For the reasons hereafter set forth, we find no merit in any issue raised by Appellants.
A. Standard of Review
We review a district court’s grant of a motion to compel arbitration de novo, applying the same standard as the district court. OPE Int’l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir.2001) (citing Local 1351 Int’l Longshoremen’s Ass’n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir.2000), cert. denied, 531 U.S. 1076, 121 S.Ct. 771, 148 L.Ed.2d 670 (2001)); PaineWebber, Inc. v. Chase Manhattan Private Bank, 260 F.3d 453, 459 (5th Cir.2001); Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd., 139 F.3d 1061, 1065 (5th Cir.1998).
B. The McCarran-Ferguson Act Did Not Reverse-Preempt the Application of the FAA to the Agreements.
Appellants’ first argument is that the FAA is inapplicable to the instant Agreements, because the FAA is precluded or preempted by the McCarran-Fergu-son Act, 15 U.S.C. § 102 (the “Act”). The Act provides the following:
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ...
15 U.S.C.A. § 1012(b). The Act bars application of the FAA to insurance contracts only in the context of a state statute evincing the same, not mere policy statements of state officials or administrative rule interpretations of governmental entities. See Miller v. Nat’l Fidelity Life Ins. Co., 588 F.2d 185, 186-87 (5 th Cir.1979). The party seeking to avail itself of the Act must demonstrate that application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance. Id. at 187. “The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by the application of federal law.” Id. Appellants fail to identify any statute that would be impaired, invalidated, or superseded by the application of the FAA. Instead, Appellants try to perpetrate a judicial end-run by asserting that an attorney general’s opinion or insurance department’s regulatory, administrative policy is the functional equivalent of a state law relating to insurance, thereby triggering the provisions of *709 the Act. Appellants’ arguments are without merit.
First, “[ojpinions of the Mississippi Attorney General do not have the force of law....” Frazier v. Lowndes County, Mississippi Bd. of Educ., 710 F.2d 1097, 1100 (5th Cir.1983) (citing Local Union No. 845, United Rubber, Cork, Linoleum and Plastic Workers of Am., Home Assoc. v. Lee County Bd. of Supervisors, 369 So.2d 497, 498 (Miss.1979)). Second, because no Mississippi statute addresses, much less prohibits or restricts, arbitration of credit insurance-related claims, disputes, or controversies, the Commissioner of Insurance for the State of Mississippi (the “Commissioner”) is without regulatory authority to prohibit arbitration clauses relating to insurance. Appellants espouse a variety of administrative rulings by the Commissioner that disallowed arbitration of all insurance-related claims as proof that insurance claims are never subject to arbitration in the State of Mississippi. In them brief, Appellants state the following: “There is no evidence herein that the Commissioner has ever approved an insurance policy, certificate, or endorsement or any form containing provisions for mandatory and binding arbitration. Consequently, the use of a mandatory, binding arbitration agreement, even though contained in a third-party contract ... is unlawful in Mississippi.” Appellees, however, have submitted into the record a press release issued by the Commissioner on 2 October 2001, which states, in pertinent part, the following:

[Commissioner] announces first policy filing allowing arbitration.

[The] Commissioner ... approve[d] a filing by Primerica Life Insurance Company containing an arbitration provision. This provision would require certain disputes to be resolved through the process of arbitration rather than in the court system. In the event of a dispute, instead of a lawsuit being filed, an independent and neutral arbitrator licensed to practice law in Mississippi would render a decision after hearing the position of the parties.... The arbitrator’s decision would be final and binding on both the policyholder and Primerica Life Insurance Company.[2]
As the record indicates, Appellants’ contention that the Commissioner never permits insurance disputes to be subject to arbitration is incorrect. The record indicates that the Commissioner can permit or disallow insurance disputes to be subject to arbitration as the Commissioner deems fit.
Based upon the clear meaning of 15 U.S.C.A. § 1012(b), we hold that the district court properly concluded that the Act does not apply, and that under the FAA, the Agreements are valid, enforceable, and irrevocable. See Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir.1971); Hamilton Life Ins. Co. of N.Y. v. Republic Life Ins. Co., 408 F.2d 606, 611 (2nd Cir.1969).
C. Appellants Are Not Entitled to a Jury Trial Regarding the Validity of the Agreements.
Second, Appellants maintain that under §§ 2 & 4 of the FAA, they are entitled to a trial by jury on the issue of arbitrability. Section 2 of the FAA states, in pertinent part, that an arbitration clause involving interstate commerce is “valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. The FAA also provides that “[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.” 9 U.S.C. § 4.
*710 1. Right to a Jury Trial Under § k of the FAA.
Appellants contend that they deserve a jury trial on the question of the validity of the Agreements. Specifically, by alleging that the Agreements are unconscionable, the products of unequal bargaining power between the parties, lacking mutuality of obligation between the parties, and failing to result in a meeting of the minds, Appellants argue that they have put the “making” of the Agreements in issue, thereby complying with § 4 of the FAA. The district court held, however, that the issues raised by Appellants relate to enforceability of the Agreements, but do not impact the “making of the arbitration” agreement. We agree with the district court’s holding and rationale.
Although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement, or the failure, neglect, or refusal to perform the agreement, it is well-established that “[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one.” Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir.1992). Further, under the Dillard analysis, a party contesting the “making” of the arbitration agreement must “make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true ... [and] produce some evidence to substantiate his factual allegations.” Id. at 1154.
In the instant case, Appellants submitted evidence in the form of affidavits that claim, inter alia, that Appellees did not explain the Agreements to Appellants or that Appellants did not realize that they were waiving a trial by jury. The affidavits proffered by Appellants, however, amount to nothing more than hollow, bald assertions that do not approach fraud in the “making” of the Agreements. See Bhatia v. Johnston, 818 F.2d 418, 421-22 (5th Cir.1987) (stating that self-serving affidavits do not amount to the type of evidence required to call the “making of the arbitration” agreement into question). Furthermore, Appellants’ affidavits fail to identify any misrepresentation by Appel-lees peculiar to the Agreements, which forecloses Appellants’ ability to state a claim of fraud in the inducement. See Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483, 491 (6th Cir.2001). Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA. Raising issues of the Agreements’ procedural or substantive unconscionability, as Appellants have in the instant case, is not the equivalent of questioning the “making” of an arbitration agreement. See Burden, 267 F.3d at 492. Under § 4 of the FAA and Dillard, therefore, Appellants have not met their burden to show their entitlement to a jury trial.
2. The Seventh Amendment Right to a Trial by Jury.
Next, Appellants claim that by forcing them to submit their claims to an arbitrator, the district court deprived them of their Seventh Amendment right to a trial by jury. Appellants suggest that the waiver of a constitutional right should be closely scrutinized, and that a waiver of jury trial rights must be clearly and unmistakably expressed.
Appellants’ argument is without foundation. First, we point out that Appellants agreed to submit to arbitration because they assented to the terms of the Agreements, which contained the following clause, located just above the signature lines:
THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRA *711 TION AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.
Therefore, by agreeing to arbitration, Appellants have necessarily waived the following: (1) their right to a judicial forum; and (2) their corresponding right to a jury trial.
Nevertheless, Appellants cite Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), for the proposition that an arbitration provision that waives jury trial rights must be clearly and unmistakably expressed. Reliance on Wright, however, is unavailing. Appellants acknowledge that the Supreme Court limited its holding in Wright to the context of a collective bargaining agreement, not to an individual’s waiver of his own rights—a situation in which the “clear and unmistakable” standard is not applicable. Id. at 80-81, 119 S.Ct. at 396-97. Thus, outside the area of collective bargaining, in which a third party (the union) seeks to waive contractually the rights of an individual member (the employee), there is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual’s rights. Williams v. Imhoff, 203 F.3d 758, 763 (10th Cir.2000).
Appellants further cite the talisman of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in support of their contention that a waiver of a constitutional right must be voluntarily, knowingly, and intelligently made. Miranda, however, is totally inapposite to the instant case, because Miranda is limited to the protection of the Fifth Amendment rights of criminal defendants after arrest and does not trigger the application of the Seventh Amendment right to a jury trial in a civil case.
The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum. We concur with the following reasoning:
The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.
Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 957 F.Supp. 1460, 1471 (N.D.Ill.1997). Here, Appellants agreed to resolve their disputes with Appellees through arbitration, and they did so in clear and unmistakable, capitalized and boldfaced words which expressly waived their right to a jury trial as well. Thus, Appellants validly waived their rights to a judicial forum, including the corollary right to a trial by jury.
D. The Agreements Are Not Unenforceable Because of the Alleged High Cost of Arbitration.
Third, Appellants contend that the filing and case service fees for arbitration are oppressive, present a hardship, and are unconscionable, thereby rendering the Agreements unenforceable. As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that “arbitration would be prohibitively expensive.” Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Appellants assert that they would not be able to afford the fees associated with arbitration under the fee schedule and rules of the AAA.
First, this testimony alone is not sufficient to render the Agreements unconscionable. See Williams v. Cigna Fin. *712 Advisors, 197 F.3d 752, 764-65 (5th Cir.1999), cert. denied, 529 U.S. 1099, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000). In Williams, this court held that, without more, the mere possibility that a party may have to share in the payment of the arbitrator’s fees is not a sufficient reason to invalidate an arbitration agreement. See id. at 764. Furthermore, when a party fails to specify excessive arbitration costs and instead speculates that a “risk” exists that the party will be saddled with prohibitive costs of the arbitration proceeding, a court is not required to invalidate the arbitration agreement. Green Tree, 531 U.S. at 90-91, 121 S.Ct. at 522. Interestingly, to date, Appellees, not Appellants, have assumed the cost of initiating the arbitration.
Second, the Agreements provide the following: “the party requesting arbitration shall at that time pay the arbitrator $125.00. Lender shall pay arbitrator all other arbitration fees and expense costs for up to one day (eight hours) of proceedings. Any other such costs shall be paid by the non-prevailing party....” According to the record, to date, only Appellees have paid the appropriate fees; however, if Appellees prevail, then Appellants must pay all costs and expenses of arbitration. Presently, the question of which party to the arbitration will ultimately prevail at arbitration is subject to speculation only and, therefore, is not a basis to hold the Agreements unenforceable. Appellants’ reliance on Shankle v. B.G. Maint. Mgmt., Inc., 163 F.3d 1230, 1234-35 (10th Cir.1999) and Cole v. Burns Int’l Sec. Services Co., 105 F.3d 1465, 1483-89 (D.C.Cir.1997) is misplaced. In each case, the court addressed an arbitration agreement that did not expressly specify which party would pay the arbitrator’s fees or whether an arbitrator’s fees could be waived or reduced in cases of hardship. See Cole, 105 F.3d at 1483-89. This case, however, is distinguishable from Cole, because the Agreements expressly state who shall pay the arbitration fees. Moreover, the rules of the AAA provide Appellants sufficient avenues to request fee-paying relief, if necessary. See Rule R-51, Commercial Arbitration Rules.
The mere fact that Appellants face the possibility of being charged arbitration fees, including paying the arbitrator’s fee if directed to do so by the arbitrator, does not render the Agreements unenforceable. Accordingly, Appellants have failed to demonstrate that the Agreements’ provision relating to fees is unconscionable simply because Appellants may eventually have to pay a portion of the arbitrator’s fees.
IV. CONCLUSION
For the foregoing reasons, the district court’s order compelling arbitration, staying the state court proceedings, and closing the case is AFFIRMED.

. Republic Finance, American Heritage, and Colonial Insurance will be referred to collectively as "Appellees.”

. See Mississippi Insurance Department website: www.doi.state.ms.us, 2 October 2001.