# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 7, 2021

Lyle W. Cayce
Clerk

No. 21-20086

Donna Kay Butler; Brittany Gallien; Ernest Kizzee; Jasmine Smithers; LaPorsha Stanley; Bonnie Williams,

*Plaintiffs—Appellants*,

*versus*

Z&H Foods, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-cv-2759

Before Southwick, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The six plaintiffs are former employees of a Popeyes restaurant owned by the defendant, Z&H Foods, Inc. ("Z&H"). In 2019, after exhausting their administrative remedies before the Equal Employment Opportunity Commission ("EEOC"), they sued in federal district court. Plaintiffs

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20086

brought discrimination and retaliation claims (based on color and/or race) under Title VII and 42 U.S.C. § 1981. Z&H filed an answer and responded to some discovery requests but made none of its own. Then, nine months after the complaint was filed, Z&H moved to compel arbitration. Relying on an arbitration agreement between each plaintiff and Z&H (the "Agreement"), the district court compelled arbitration and dismissed the case. Plaintiffs appealed.

We review the district court's order compelling arbitration *de novo*. *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014). But we review the court's factual findings only for clear error. *Id.* Applying those standards, we address and reject plaintiffs' four arguments in turn. The first three lack merit, and plaintiffs forfeited the fourth by failing to raise it before the district court.

Plaintiffs first argue there simply was no arbitration Agreement. More precisely, they argue the Agreement's existence is "in issue" within the meaning of the Federal Arbitration Act ("FAA"), and that the district court therefore erred by denying them a jury trial on the question. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

Questions of an arbitration agreement's validity and existence are governed by state law. *See, e.g.*, *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). To put the Agreement's existence "in issue" for FAA purposes, plaintiffs "must make at least some showing that under prevailing law, [they] would be relieved of [their] contractual obligations to arbitrate if [their] allegations proved to be true and produce some evidence to substantiate [their] factual allegations." *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (quotation and alterations omitted); *see* 9 U.S.C. § 4. And without corroborating evidence, self-serving

affidavits will not suffice to entitle the plaintiffs to a jury trial. *See Orr*, 294 F.3d at 710.

The district court correctly applied these standards and concluded the Agreement's existence was not "in issue." Though each plaintiff offered an affidavit claiming he or she had not signed the Agreement, the court concluded that "Plaintiffs do not offer, and the record does not contain, any evidence that corroborates Plaintiffs' self-serving affidavits." Given that factual finding, the existence of the Agreement was not in issue. *See Orr*, 294 F.3d at 710. And the court explicitly based its finding on its consideration of a wide variety of evidence—including a digitally signed Agreement for each plaintiff.

The plaintiffs now contend the court's factual conclusion was clearly erroneous. Their argument boils down to the claim that Z&H either forged each and every one of plaintiffs' digital signatures or simply falsified the Agreements from the ground up. Specifically, they point to a letter Z&H previously sent to the EEOC—a letter where Z&H wrongly said it had "no record" of one of the plaintiffs' (Jasmine Smithers) ever having worked for Z&H. They suggest that this letter, combined with Z&H's later production of Smithers's signed Agreement, proves that Z&H forged at least her signature and perhaps the others. They also argue that forging digital documents and signatures is, in general, easy to do.

Neither point comes close to showing the district court clearly erred. Z&H offered an explanation for the inaccurate EEOC letter: the error, said Z&H, was based on Smithers' own mistaken listing of her dates of employment when she complained to the EEOC. There is nothing clearly erroneous about crediting that explanation. And the mere fact that a document *can* be falsified does not mean any given document actually *was* falsified. So we conclude the district court's finding—that nothing in the

record supports plaintiffs' affidavits about falsification—was not clearly erroneous.

Second, the plaintiffs argue the Agreement was based on an illusory promise and therefore invalid under Texas law. This question is indeed governed by Texas contract law, *see e.g.*, *Halliburton*, 921 F.3d at 530, and we review the district court's contract interpretation *de novo*, *see D2 Excavating Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 433 (5th Cir. 2020). Under Texas law, "an arbitration provision [is] illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015).

The plaintiffs argue as follows. The Agreement is part of an Employee Handbook (the "Handbook"). The Handbook provides both that "[t]he procedures, practices, policies and benefits described here may be modified or discontinued," and that "Z&H . . . reserves the right to amend or modify these policies at any time." Meanwhile, the arbitration Agreement describes itself as "mutually binding" and "only . . . revo[cable] or modifi[able] by a writing signed by the Parties." But the Agreement also provides that "to the extent of any conflict with this Agreement, the express terms regarding the resolution of disputes contained in the separate written binding and enforceable contract shall control." The Handbook counts as such a separate contract. So, plaintiffs contend, the Handbook's *unilateral*-modification provision trumps the Agreement's *mutual*-modification provision and renders the latter illusory under *Royston*. 467 S.W.3d at 505.

This reading is creative but wrong. First, it does not accord with the plain contractual text. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("'Plain meaning' is a watchword for contract interpretation

because word choice evinces intent. A contract's plain language controls, not what one side or the other alleges they intended to say but did not." (quotation omitted)). The Handbook states that Z&H has "*separate* documents regarding arbitration." (emphasis added). Thus, the Handbook (along with its unilateral-modification clause) does not apply to the Agreement. Moreover, as the district court correctly noted, plaintiffs' reading would render superfluous the Agreement's provision that it "can only be revoked or modified by a writing signed by the Parties." *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) (readings that render phrases meaningless are disfavored). We conclude that under Texas law, Z&H has no unilateral power to terminate the Agreement. The Agreement is therefore not illusory.

Third, the plaintiffs argue Z&H waived its right to arbitrate through its litigation conduct. "Waiver of arbitration is a disfavored finding. But we will find it when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 266 (5th Cir. 2021) (quotation and internal citation omitted). And that invocation requires, "at the very least, engag[ing] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010). Yet merely participating in discovery—without "shower[ing] the opposing party with interrogatories and discovery requests"—does not amount to waiver. *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 898 (5th Cir. 2005) (quotation and alterations omitted).

Here, Z&H filed an answer and participated in discovery, but it made neither discovery requests nor motions of its own. It waited nine months before filing its motion to dismiss and compel arbitration. But under our precedent, that does not constitute a waiver. *See Keytrade*, 404 F.3d at 898.

No. 21-20086

Fourth and finally, the plaintiffs argue the district court had power to stay the case but not to dismiss it. They raise this issue for the first time on appeal and make no showing of extraordinary circumstances. So the issue is forfeited. *See, e.g.*, *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) ("Because [the appellant] did not present this argument to the district court, and he makes no attempt to demonstrate extraordinary circumstances for why we should consider it, this argument is [forfeited]."). The plaintiffs' only response is that Z&H asked the district court to stay the case as an alternative to dismissing it. But a mere request to stay—in the alternative and by the opposing party, no less—is no substitute for plaintiffs' actually raising the argument below.

AFFIRMED.